Curtis BRAXTON aka William Braxton, Petitioner

v.

Hon. Gary S. GLAZER, Respondent.

No. 69 EM 2014.

Supreme Court of Pennsylvania.

July 28, 2014.

## ORDER

PER CURIAM.

**AND NOW,** this 28th day of July, 2014, the Application for Leave to File Original Process is **GRANTED,** and the Petition for Writ of Mandamus is **DENIED.** The Prothonotary is directed to strike the jurist's name from the caption.

COMMONWEALTH of Pennsylvania, Appellee

v.

Dennis L. PRENDES, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 30, 2013.
Filed July 22, 2014.

James A. Swetz, Stroudsburg, for appellant.

Rebecca J. Kulik, Asst. Dist. Atty., Easton, for Commonwealth, appellee.

BEFORE: GANTMAN, J., SHOGAN, J., and PLATT, J.*

OPINION BY GANTMAN, J.:

Appellant, Dennis L. Prendes, appeals from the judgment of sentence entered in the Northampton County Court of Common Pleas, following his guilty plea to indecent assault of a person under thirteen (13) years old, endangering the welfare of children, and corruption of minors.[1] We affirm.

The relevant facts and procedural history of this case are as follows. Appellant

was arrested on March 13, 2012, and charged with numerous offenses, including rape, involuntary deviate sexual intercourse, aggravated indecent assault of a person less than thirteen (13) years of age, indecent assault of a person less than thirteen (13) years of age, endangering the welfare of children, and corruption of minors, pertaining to the continued sexual assault of his niece over the period of eight years. The trial court opinion continues:

*Pretrial Proceedings*

On July 9, 2012, [Appellant] filed an Omnibus Pre-trial Motion which included the following motions: (1) a Petition for a Writ of *Habeas Corpus,* moving to quash the Information on the basis that the evidence presented did not establish a *prima facie* case; (2) a "Motion to Dismiss for Lack of Specific Dates"; (3) a motion challenging the competency of the victim, S.P., to be a witness; and (4) a motion seeking a psychiatric/psychological examination of S.P. On July 25, 2012, we presided over an evidentiary hearing pertaining to [Appellant's] motion challenging S.P.'s competency and his motion for a psychiatric/psychological examination of S.P. Thereafter, on August 24, 2012, we denied all of [Appellant's] motions contained in the Omnibus Pre-trial Motion.

On September 4, 2012, [Appellant] filed two (2) motions *in limine:* (1) a "Motion *In Limine* To Limit Cross–Examination of Defendant's Character Witnesses and Preclude Introduction of Rebuttal Evidence"; and (2) a "Motion *In Limine* To Exclude Alleged Prior Bad Acts Evidence." On September 11, 2012, we denied [Appellant's] motion to preclude evidence of prior bad acts. On September 14, 2012, we granted [Appellant's] mo-

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 3126(a)(7), 4304(a), and 6301(a), respectively.

tion to limit cross-examination of character witnesses.

*The Jury Trial*

Following *voir dire* on September 10, 2012, a jury of twelve citizens and two alternates was selected, seated and sworn. From September 11, 2012 through September 17, 2012, the impaneled jury heard opening statements, testimony from fifteen witnesses, including S.P. and [Appellant], closing arguments, and the charge of the [c]ourt. On September 17, 2012, the jury deliberated for six hours. During deliberations, the jury presented the [c]ourt with two questions, which the [c]ourt answered in the presence of Appellant, his attorney, and the attorney for the Commonwealth. At approximately 7:30 p.m., the jury foreperson informed the court officer that the jury did not believe it could reach a unanimous verdict on some of the charges. The [c]ourt revealed this communication to the parties. After discussing this issue with the parties, the [c]ourt summoned the jury to the courtroom and confirmed with the jury foreperson that the jury was unable to reach a unanimous verdict on all of the charges. The [c]ourt then read to the jury Pennsylvania Standard Jury Instruction 2.09, "Deliberations and Verdict: Deadlocked Jury."

> Ladies and gentlemen of the jury, I remind you that in order to return a verdict on any charge you must agree unanimously on that specific charge. Each of you has a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to your individual judgment.

However, each of you must decide this case for yourself after an impartial consideration of the evidence with your fellow jurors. While you should not hesitate to reexamine your own views and change your opinion if you are convinced that your opinion is erroneous, do not feel compelled to surrender your honest belief as to the weight or effect of the evidence solely because of the opinion of your fellow jurors for the mere purpose of returning a verdict.

The [c]ourt asked the jury to return at 9:00 a.m. on September 18, 2012, to resume deliberations.

After the parties left the courtroom on September 17, 2012, but before the jury left the deliberation room to depart from the courthouse, the jury foreperson provided a note to the court officer. Upon determining that the note did not contain a question from the jury, the court officer returned the note to the jury foreperson. The court officer then informed the [c]ourt of the content of the note. Because the [c]ourt was informed of the content of the note, the [c]ourt instructed the court officer to retrieve the note from the jury foreperson at 9:00 a.m. on September 18, 2012.

At 9:00 a.m. on September 18, 2012, the [c]ourt met with counsel in chambers and allowed them to review the note, which set forth the jury's numerical split regarding all of the charges, as follows:

| *Charge* | *Guilty* | *Not Guilty* |
| --- | --- | --- |
| Rape | 8 | 4 |
| Rape of a Child | 0 | 12 |
| [IDSI] | 8 | 4 |
| [IDSI] With a Child | No Tally | No Tally |
| Aggravated Indecent Assault | 10 | 2 |
| Aggravated Indecent Assault of a Child | 0 | 12 |
| Indecent Assault | 10 | 2 |
| Endangering the Welfare of Children | 10 | 2 |
| Corruption of Minors | 10 | 2 |

The [c]ourt then read to the jury Pennsylvania Standard Jury Instruction 2.09, "Deliberations and Verdict: Deadlocked Jury," and asked the jury to resume its deliberations. At approximately 10:00 a.m., the jury foreperson informed the court officer that the jury had reached a verdict on some of the charges but could not reach a verdict as to other charges. The [c]ourt informed counsel that the jurors would be brought into the courtroom and that the [c]ourt was prepared to take a partial verdict.

Upon being informed of this development, [Appellant] and his attorney requested a recess. Following the recess, [Appellant's] attorney and the attorney for the Commonwealth informed the [c]ourt that they had agreed upon both a plea and a sentence. The agreement provided that [Appellant] would plead guilty and allocute to the charges of (1) indecent assault of a person under 13 years old; (2) endangering the welfare of children; and (3) corruption of minors. The agreement further provided that [Appellant] would be sentenced to serve a term of imprisonment in a state correctional institution for a minimum period of 30 months to a maximum period of 60 months, followed by a period of 36 months of probation. The [c]ourt accepted both the plea agreement and the agreed-upon sentence. As a result of the plea agreement, the jury was discharged without rendering a verdict as to any of the charges.

*The Guilty Plea Colloquy*

[Appellant] completed a written guilty plea statement and a written addendum to the sentencing colloquy for registration of sexual offenders. The [c]ourt also engaged in a detailed verbal guilty plea colloquy with [Appellant]. As to the factual basis for the guilty plea, the following was placed on the record:

[COMMONWEALTH]: Your Honor, [Appellant] is the uncle of the victim in this matter, the victim being [S.P.], she's now 21. [Appellant], as her uncle, as [S.P.] was in the care of [Appellant] on various occasions throughout her life, primarily between the ages of 5, all the way up until she was 13, [Appellant] did have indecent contact, indecent sexual contact with the victim on numerous occasions throughout that period of time. [Appellant] also, in that indecent contact, did have contact with the victim's vaginal area with his hand.

THE COURT: Is that what happened, [Appellant]?

[APPELLANT]: That's what I'm being charged with and that's what I'm agreeing to, yes, Your Honor.

THE COURT: You have to do better than that. Is that what happened, [Appellant]? Did you do that? Did you touch [S.P.'s] vagina for the purpose of arousing sexual desire to yourself?

[APPELLANT]: Yes.

THE COURT: Are you sure?

[APPELLANT]: Yes.

[Appellant's] written guilty plea statement included the following questions:

Do you understand that even after your guilty plea is accepted by the [c]ourt, you will have the right to file a motion to withdraw your guilty plea at any time prior to the sentencing?

\* \* \*

If the [c]ourt does not allow you to withdraw your guilty plea, you may appeal that decision to the Superior Court within thirty (30) days. Do you understand this?

[Appellant] wrote "Yes" in answer to both of these questions. Both [Appellant] and his counsel signed and dated the guilty plea statement, and [Appellant] initialed each page. [Appellant] acknowledged on the record that he had signed the guilty plea statement, that he understood all of the questions, that he had answered all of the questions himself, and that he had initialed each page. [Appellant's] counsel acknowledged on the record that he had consulted with [Appellant] about completing the guilty plea colloquy and that he believed [Appellant] understood the rights he was waiving by pleading guilty. When the [c]ourt then asked [Appellant] whether he was satisfied with the service of his attorney, he answered, "Very much so, Your Honor."

The [c]ourt accepted [Appellant's] guilty plea. The [c]ourt ordered that the Pennsylvania Sexual Offenders Assessment Board ("SOAB") assess [Appellant] to determine whether he met the criteria to be classified as [a Sexually Violent Predator ("SVP")] within the meaning of section 9792 of Megan's Law, 42 Pa.C.S.A. § 9792.[2] The [c]ourt deferred sentencing in order to permit completion of the SOAB assessment.

*Post–Trial Procedural History*

On December 13, 2012, [Appellant] filed a motion to withdraw his guilty plea on the ground that he was factually innocent of all charges set forth in the Information filed against him. On December 21, 2012, the [c]ourt held an evidentiary hearing on [Appellant's] motion. At the hearing, the Commonwealth stated that it would be prejudiced by the withdrawal of [Appellant's] guilty plea. The attorney for the Commonwealth stated:

Well, having presented its entire case, Your Honor, we would be prejudiced to that extent. [Appellant] has been made fully aware of what the Commonwealth is intending or had intended to present and did present.

[Appellant] did observe the jury during the trial, had the opportunity to select this jury, and I believe that it would be unfair for [Appellant] to have a second bite at the apple, given the fact that he already had his trial. If he were to withdraw his plea now, we don't go back to the point where the jury's already impaneled and out and deliberating. We go back and [Appellant] is then given another new trial, with a brand new jury. I believe that definitely would be prejudicial to the Commonwealth.

On December 21, 2012, the [c]ourt denied [Appellant's] motion to withdraw his guilty plea.

*The Sexually Violent Predator Hearing*

On January 11, 2013, the [c]ourt held an evidentiary hearing to determine whether [Appellant] could be classified as an SVP. [Appellant] called no witnesses. The Commonwealth called only one witness, Dr. Veronique Valliere, a licensed psychologist and member of the Pennsylvania SOAB, who had performed the [c]ourt-ordered sex-offender assessment of [Appellant] and prepared a written report. Dr. Valliere testified that she has been the director of an outpatient sex offender program since 1994, that she has been a member of the SOAB since 1997, and that she has testified as an expert in numerous counties throughout eastern Pennsylvania. Defense counsel raised no objection to Dr. Valliere's ex-

---

**2.** The court is referring to Megan's Law, which was still in effect at the time of Appel- lant's guilty plea.

pert qualifications, and the [c]ourt admitted her as an expert in the field of sexual offender assessments.

Dr. Valliere testified that she did not interview [Appellant] as part of her assessment, because he declined to be interviewed. She testified that, in performing her assessment, she had relied on numerous written records, listed on page one (1) of her report, including the arrest warrant, affidavit of probable cause, police reports, charge sheet, victim's statements, polygraph examinations, a handwritten letter by [Appellant's] ex-wife, records from the Northampton County Division of Children, Youth and Families ("Children & Youth"), the report by the SOAB investigator, and the [c]ourt's Order requesting the assessment. Dr. Valliere said that these records are "typically relied upon to make these kind[s] of evaluations."

Dr. Valliere testified that in performing her assessment of [Appellant], she had considered each of the factors she was required to consider under [Section 9799.24(b) ] of [SORNA, 42 Pa.C.S.A. § 9799.24(b) ].[3] She said that, based on her consideration of the statutory factors, she had formed an opinion, to a reasonable degree of professional certainty, that [Appellant] meets the criteria for classification as an SVP. She outlined the facts she considered relevant to each factor, as more fully set forth in her written report. Dr. Valliere's written report reflected the follow-

ing analysis of the facts relevant to each factor:

*Facts of the Current Offense*

1. *Whether the offense involved multiple victims.* Although the current offense involved only one victim, [Appellant] committed multiple offenses against the same victim over time and abused her in front of his biological daughter, indicating risk-taking behavior and confidence in his control over the victim and witnesses.

2. *Whether the individual exceeded the means necessary to achieve the offense.* When the victim began to resist [Appellant's] advances, he forced her to perform oral sex on him, threatened to abuse her sister, and showed her a gun.

3. *The nature of the sexual contact with the victim.* [Appellant] rubbed the victim's genitals, penetrated her digitally, forced her to masturbate him and perform oral sex on him, and ultimately ejaculated in her mouth.

4. *The relationship of the individual to the victim.* [Appellant] was the victim's uncle.

5. *Age of the victim.* The abuse started when the victim was five years old and continued until she was twelve years old, indicating pedophilic arousal, consistent with the allegations of [Appellant's] biological daughter.

6. *Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.*

---

**3.** The trial court continues to refer to Megan's Law provisions, which expired on December 20, 2012. *See* 42 Pa.C.S.A. §§ 9791–9799.9. The Sexual Offender Registration and Notification Act (SORNA) became effective in its place. *See* 42 Pa.C.S.A. §§ 9799.10–9799.41. SORNA governed Appellant's court-ordered SVP hearing that occurred on January 11, 2013. *See* 42 Pa.C.S.A. § 9799.13. While the statutory section numbers changed with the

enactment of SORNA, the standards governing the expert witness assessment for the SVP hearing remained substantially the same. We also observe our Supreme Court has declared an earlier version of Megan's Law unconstitutional as violative of the single subject rule of the state Constitution. *See Commonwealth v. Neiman,* — Pa. ——, 84 A.3d 603 (2013). The *Neiman* decision does not affect the present case.

Although there was no evidence that pain, humiliation, or terror was a source of arousal for [Appellant], he did use force, coercion, and fear to induce the victim's compliance.

7. *The mental capacity of the victim.* The victim was very young when the abuse began.

*Prior Offense History*

1. *The individual's prior criminal record (sexual and nonsexual).* Although [Appellant] had a limited criminal history, he had abused the victim in this case after being investigated by Children & Youth for allegedly abusing his biological daughter, indicating that he was undeterred by the potential legal consequences of his actions.

2. *Whether the individual completed any prior sentences.* [Appellant] had no prior sentences, but he did decline to cooperate with an evaluation or fulfill conditions to attain contact with his biological daughter and, as a result, lost contact with his biological children.

3. *Whether the individual participated in available programs for sex offenders.* [Appellant] declined to cooperate with a sex offender evaluation and abused the victim even though he had been offered help in the past.

*Characteristics of the Offender*

1. *Age of the individual.* [Appellant] is sixty-two years of age. Although some research suggests that older individuals are less likely to reoffend, that is not necessarily true for pedophiles.

2. *Use of illegal drugs by the individual.* Although [Appellant] admitted to regular use of marijuana, there was no evidence that it contributed to his offending.

3. *Any mental illness, mental disability, or mental abnormality.* Because [Appellant] abused a prepubescent child for more than six months, that alone was sufficient to meet the diagnostic criteria for pedophilia, but the diagnosis was also supported by the facts that [Appellant] abused his biological daughter and told the victim that she was getting too old for him.

4. *Behavioral characteristics that contribute to the individual's conduct.* [Appellant] repeatedly abused a prepubescent child; escalated his offenses to include forcible oral sex; was willing to use force and threats; abused the victim in front of his biological daughter; abused the victim even after he had been investigated for similar allegations in the past; had an opportunity to seek help but did not; was undeterred by the threat of potential legal consequences for his behavior; and had a history that might have included physical child abuse and domestic violence.

*Factors that are supported in the sexual assessment field as reasonably related to the risk of reoffense.*

[Appellant's] prolonged abuse of a prepubescent child, his escalation of the abuse, his abuse of a second victim, and his abuse of the victim after an official investigation for alleged abuse of another victim all indicate a risk of reoffense.

*Mental Abnormality/Personality Disorder Criterion*

1. *The individual has a congenital or acquired "condition" which is the impetus to the sexual offending.* [Appellant] meets the diagnostic criteria for pedophilia, a congenital or acquired condition.

2. *The individual suffers from a lifetime "condition."* [Appellant] has formed a deviant sexual arousal pattern, a lifetime condition that predisposes him to engage in sexual behavior with children.

3. *The "condition" over-rode the individual's emotional/volitional control.* [Appellant] repeatedly engaged in sexual behavior with the victim despite his awareness of potential consequences.

4. *Likelihood of reoffending.* [Appellant] continued to offend after being investigated, and his diagnosis and behavior pattern make him likely to reoffend if given the opportunity.

*Predatory Behavior Criterion*

[Appellant] was the victim's uncle and exploited the family relationship to gain access to her and have her placed in his care. He also used persuasion, threats and force to establish a secretive relationship for the purpose of victimization. Dr. Valliere testified that [Appellant] meets the statutory definition of an SVP, because:

(1) he has been convicted of a sexually violent offense as set forth in [SORNA Section 42 Pa.C.S.A. § 9799.14(b)]; and

(2) he suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses within the meaning of [SORNA Section 9799.12, 42 Pa.C.S.A. § 9799.12].

Dr. Valliere said that [Appellant] satisfies the first part of the definition, because he was convicted of one of the sexually violent offenses set forth in [SORNA Section 9799.14]. Dr. Valliere said that [Appellant] also satisfies the second part of the definition of SVP, for three (3) reasons.

First, she said that [Appellant] has a "mental abnormality," defined in the statute as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons," [42 Pa.C.S.A. § 9799.12]. Specifically, she said that [Appellant] meets the diagnostic criteria for pedophilia, which means he has a lifelong predisposition to commit sexual assaults on children. ("[G]iven that he sexually assaulted a child for more than 6 months he would meet the diagnostic criteria for pedophilia which is considered an acquired ... or attained condition that is considered to last a lifetime ... and predisposes that person over their lifetime to commit future acts of sexual victimization.")

Second, she said that sexual assaults on children are, by definition, "sexually violent." (The term sexually violent predator is a legal term which basically subsumes the idea that a sexual violation is always violent.) Thus, she said, the offenses that [Appellant] is predisposed to commit are "sexually violent" offenses.

Third, Dr. Valliere testified that [Appellant's] behavior was "predatory," which the statute defines as behavior directed at a stranger or at a person with whom a relationship has been [initiated], established, [maintained] or promoted for the primary purpose of victimization ([citing] [SORNA 42 Pa.C.S.A. § 9799.12]). She said that [Appellant's] behavior was predatory, because he repeatedly gained access to the child over a period of years by exploiting a familial relationship to have the child placed in his care. She said, "[H]e had access to this particular victim through a familial relationship, I believe he was her uncle, he promoted a secretive relationship in order to facilitate his ability to victimize her using a variety of techniques to ensure her lack of disclosure throughout the time he victimized her."

Dr. Valliere did not have the transcript of [Appellant's] guilty plea colloquy and

therefore did not rely upon it in forming her opinion. However, when [Appellant's] attorney questioned Dr. Valliere at the SVP hearing, he read the transcript of [Appellant's] guilty plea colloquy to her verbatim and asked whether her opinion would change if the only facts she had available to her were those admitted in the guilty plea colloquy. Dr. Valliere responded that the facts admitted in the guilty plea colloquy were sufficient, standing alone, to support her opinion that [Appellant] meets the criteria for classification as an SVP. She stated:

> [The guilty plea colloquy] completely confirms my opinion. Pedophilic arousal is diagnostically defined as repeated sexual contact with a prepubescent child over a 6–month period, so it appears to me the guilty plea captures that more than adequately ... to indicate to the [c]ourt that he does have a mental abnormality as defined by the statute.

Despite Dr. Valliere's response, defense counsel objected to admission of her report and opinion on the ground that she had relied on "unproven allegations" of criminal conduct, taken from police reports and other written records, [which] had not been admitted at [Appellant's] guilty plea colloquy. However, these allegations were not "unproven." Virtually all of the facts that Dr. Valliere relied upon in her opinion had been the subject of extensive sworn testimony at trial, where [Appellant's] counsel had confronted and cross-examined the witnesses. Although Dr. Valliere did not have the trial transcript and therefore did not rely on it in forming her opinion, the [c]ourt, as finder of fact, considered the trial testimony in evaluating Dr. Valliere's opinion. For example, [Appellant] argued at the SVP hearing that Dr. Valliere could not rely on evidence of

penetration, because [Appellant] had not admitted to penetration in his guilty plea colloquy. (Dr. Valliere's report contains things such as penetration in this case which was not the factual basis of the guilty plea ... ). However, the victim gave extensive testimony at trial that she had been penetrated by [Appellant]. ("[H]e proceeded to stick his fingers inside of me ..."); ("Q. Where did his penis go? A. Into my mouth. Q. Could you describe what happened then. A. I started crying and gagging ...").

Similarly, at the SVP hearing, [Appellant's] counsel cross-examined Dr. Valliere by asking whether her opinion would have changed if she assumed "that there was no admission by [Appellant] that he showed [the victim] a gun, threatened to abuse her sister and then physically forced her to suck his penis[,] as part of the guilty plea colloquy." Dr. Valliere answered that "it would not affect my entire diagnosis of him as a pedophile." However, the victim testified to those facts at trial. *See, e.g.,* ("He would talk about the kind of guns that he had and ... that if you used it on people it could do a lot of damage"); ("[M]y sister was yelling at me and I said to her you don't know how many dicks I had to suck to protect you"); ("[H]e took his towel, came over to me, straddled me and pushed his penis into my face, told me to open my mouth and had me perform oral sex on him").

Further pursuing this line of questioning, defense counsel asked Dr. Valliere whether it would change her opinion if the record contained no evidence "that the offense conduct contained multiple sexual acts over time" and that [Appellant] "abused [the victim] in front of his own daughter." Dr. Valliere answered, "It would impact on the factor that I would say that he took a risk to abuse

one child in front of the other, but it would not impact my final conclusion." However, the first of those allegations was admitted by [Appellant] in the guilty plea colloquy, and both were the subject of sworn testimony at trial (testimony by S.P. that the abuse began when she was five years old, continued regularly in multiple locations "whenever he got the chance," and did not end until she was thirteen years old); (testimony by [Appellant's] biological daughter that she saw [Appellant] in a bedroom with S.P., that [Appellant] was "in front of her knelt down," and that "[h]is hands were up around her waist and private area").

Defense counsel also asked Dr. Valliere, "[I]f he says he's innocent, that's irrelevant to your determination?" Dr. Valliere answered, "That's a matter for the court, not me."

Dr. Valliere's report and opinion were admitted into evidence over defense counsel's objection. The [c]ourt found Dr. Valliere to be credible and accepted her report and testimony.

\* \* \*

The [c]ourt reached the following conclusions of law:

[Appellant] meets the statutory definition of an SVP, because (1) he was convicted of indecent assault of a person under thirteen years old, one of the sexually violent offenses as set forth in [SORNA Section 9799.14, 42 Pa.C.S.A. § 9799.14] and (2) he has a "mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses" within the meaning of [SORNA Section 9799.12, 42 Pa.C.S.A. § 9799.12].

Because [Appellant] meets the diagnostic criteria for pedophilia and has formed a deviant sexual arousal pattern, a lifetime condition that predisposes him to engage in sexual behavior with children, he has a "mental abnormality," defined in the statute as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." [SORNA Section 9799.12, 42 Pa.C.S.A. § 9799.12].

Because sexual assaults on children are, by definition, "sexually violent," the offenses that [Appellant] is predisposed to commit are "sexually violent" offenses within the meaning of [42 Pa.C.S.A. § 9799.12].

Because [Appellant] repeatedly gained access to S.P. over a period of years by exploiting a familial relationship to have the child placed in his care, [Appellant's] behavior was "predatory," which the statute defines as behavior "directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." [42 Pa.C.S.A. § 9799.12].

Based on the admissions in [Appellant's] guilty plea colloquy and Dr. Valliere's report and testimony, the [c]ourt stated on the record at the SVP hearing that the Commonwealth had established by clear and convincing evidence that [Appellant] is an SVP as defined under [SORNA Section 9799.12, 42 Pa.C.S.A. § 9799.12].

(Trial Court Opinion, dated March 28, 2013, at 2–27) (most internal citations to the record and some quotation marks omitted). Immediately following the SVP hearing on January 11, 2013, the court sentenced Appellant in accordance with the plea agreement to a term of imprisonment of thirty (30) to sixty (60) months, followed by thirty-six (36) months of pro-

bation. Appellant timely filed a notice of appeal on January 22, 2013. On January 23, 2013, the court ordered Appellant to file a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b), which Appellant timely filed on February 6, 2013.

Appellant now raises two issues on appeal:

> DID THE TRIAL COURT ABUSE IT DISCRETION BY ASSUMING PREJUDICE TO THE COMMONWEALTH AND DENYING [APPELLANT'S] PRE–SENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA ENTERED AFTER THE JURY HAD BEGUN DELIBERATING WHERE THE WRITTEN PLEA COLLOQUY ADVISED [APPELLANT] HE HAD THE RIGHT TO FILE A PETITION TO WITHDRAW HIS PLEA PRIOR TO SENTENCING AND THE TRIAL COURT DID NOT ADVISE [APPELLANT] WITHDRAWAL OF HIS PLEA WOULD BE DIFFICULT?

> DID THE TRIAL COURT ABUSE ITS DISCRETION BY ALLOWING A REPRESENTATIVE OF THE SEXUAL OFFENDER'S ASSESSMENT BOARD TO TESTIFY TO UNPROVEN ALLEGATIONS IN WRITTEN RECORD, POLICE REPORTS AND THE AFFIDAVIT OF PROBABLE CAUSE NOT ADMITTED BY APPELLANT AS PART OF HIS GUILTY PLEA?

(Appellant's Brief at 4).

In his first issue, Appellant contends the liberal pre-sentence standard for withdrawal of a guilty plea should apply because he filed his motion to withdraw his guilty plea before sentencing and asserted his innocence. Appellant also claims the trial court failed to inform Appellant that any withdrawal of his plea would be subject to "presumed" prejudice to the Commonwealth. According to Appellant, even if prejudice to the Commonwealth is presumed where the plea is negotiated and entered after the Commonwealth has presented its case or the jury has begun deliberations, the court should have advised Appellant that any attempt to withdraw his plea would be tested under a more stringent standard. Appellant complains the court improperly speculated that the Commonwealth would incur substantial prejudice. Appellant insists mere speculation does not rise to the level of substantial prejudice. Appellant submits his guilty plea was defective because the court told him he had the right to move to withdraw his guilty plea prior to sentencing when, under the court's standard, Appellant would not be able to withdraw his plea under any circumstances. Appellant concludes his guilty plea was not knowing, voluntary and intelligent, and the trial court abused its discretion when it denied Appellant's pre-sentence motion to withdraw his guilty plea. We disagree with Appellant's contentions.

 "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa.R.Crim.P 591(A); *Commonwealth v. Santos*, 450 Pa. 492, 494, 301 A.2d 829, 830 (1973). "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made [b]efore sentencing ... should be liberally allowed." *Commonwealth v. Forbes*, 450 Pa. 185, 190, 299 A.2d 268, 271 (1973). "Thus, in determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, 'the test to be applied by the trial courts is fairness and justice.'" *Id.* at 191, 299 A.2d at 271. "If the trial court finds 'any fair

and just reason', withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.'" *Id.* As a general rule, "the mere articulation of innocence [is] a 'fair and just' reason for the pre-sentence withdrawal of a guilty plea unless the Commonwealth has demonstrated that it would be substantially prejudiced." *Commonwealth v. Katonka,* 33 A.3d 44, 46 (Pa.Super.2011) (*en banc*) (emphasis added).

In contrast, after the court has imposed a sentence, a defendant can withdraw his guilty plea "only where necessary to correct a manifest injustice." *Commonwealth v. Starr,* 450 Pa. 485, 490, 301 A.2d 592, 595 (1973). "[P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage the entry of guilty pleas as sentencing-testing devices." *Commonwealth v. Kelly,* 5 A.3d 370, 377 (Pa.Super.2010), *appeal denied,* 613 Pa. 643, 32 A.3d 1276 (2011). If the appellant knows the only possible sentence he can get for the crime to which he pled guilty, then any pre-sentence motion to withdraw the plea is akin to a post-sentence motion to withdraw the plea, and the "manifest injustice" standard will apply to the pre-sentence motion. *Commonwealth v. Lesko,* 502 Pa. 511, 517, 467 A.2d 307, 310 (1983).

To be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. *Commonwealth v. Pollard,* 832 A.2d 517, 522 (Pa.Super.2003). "[A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." *Commonwealth v. Gunter,* 565 Pa. 79, 84, 771 A.2d 767, 771 (2001). The Pennsylvania Rules of Criminal Procedure mandate pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. *Commonwealth v. Hodges,* 789 A.2d 764, 765 (Pa.Super.2002) (citing Pa.R.Crim.P. 590). Under Rule 590, the court should confirm, *inter alia,* that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. *Commonwealth v. Watson,* 835 A.2d 786 (Pa.Super.2003). The reviewing Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. *Commonwealth v. Muhammad,* 794 A.2d 378 (Pa.Super.2002). Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. *Pollard, supra.*

Nevertheless, "Knowledge of the procedural aspects of the right to withdraw the plea does not bear upon whether it was voluntary in the first instance." *Commonwealth v. Chumley,* 482 Pa. 626, 639–40, 394 A.2d 497, 504 (1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979). If the colloquy properly informs the defendant of the rights he is waiving by virtue of the plea, and the defendant knows his sentence, the guilty plea is not involuntary or unknowing simply because the court failed to inform the defendant beforehand of the standard that would apply to a petition to withdraw the plea. *See generally Commonwealth v. McClendon,* 403 Pa.Super. 467, 589 A.2d 706, 711–12 (1991) (en banc), appeal denied, 528 Pa. 622, 597 A.2d 1151 (1991) (stating court is not required to inform

defendant of relative standards for withdrawing guilty plea before sentencing). In other words, the integrity of a defendant's plea remains intact even if the court failed to inform the defendant of "how, when, or under what circumstances the plea could be withdrawn." *Chumley, supra* at 639–40, 394 A.2d at 504 (stating guilty plea constitutes waiver of rights associated with trial; knowledge of supplementary rights is not necessary to validate plea).

 Of the considerations outlined in *Forbes,* "the critical one is the presence or lack of prejudice to the Commonwealth." *Commonwealth v. Boofer,* 248 Pa.Super. 431, 375 A.2d 173, 174 (1977) (citing *Commonwealth v. McLaughlin,* 469 Pa. 407, 412, 366 A.2d 238, 241 (1976) (stating: "[T]he existence of substantial prejudice to the Commonwealth is the crucial factor in determining whether to allow a presentence withdraw of a guilty plea")). Generally speaking, "prejudice would require a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled." *Commonwealth v. Kirsch,* 930 A.2d 1282, 1286 (Pa.Super.2007); *appeal denied,* 596 Pa. 727, 945 A.2d 168 (2008). When a guilty plea is withdrawn before sentencing, the withdrawal usually does not substantially prejudice the Commonwealth if it simply places the parties "back in the pretrial stage of proceedings." *Id.* Mere speculation that witnesses would not appear at a subsequent trial or would change their stories does not alone rise to the level of substantial prejudice. *McLaughlin, supra* at 414, 366 A.2d at 241.

 When, however, a defendant attempts to withdraw a guilty plea entered after presentation of the Commonwealth's case-in-chief, "prejudice to the Commonwealth ... although difficult to prove, may be a very real possibility." *Commonwealth v. Morales,* 452 Pa. 53, 55, 305 A.2d 11, 13 (1973). Substantial prejudice exists if a defendant obtains "a full preview of the Commonwealth's evidence before deciding upon [his] trial strategy." *Id.* Withdrawal of the plea also "might be a means of obtaining an entirely new jury for a defendant anytime he feels that the jury originally selected is not favorably disposed to his cause...." *Id.* Substantial prejudice also exists if a defendant "now has a script of the testimony of the principal Commonwealth witness...." *Commonwealth v. Ammon,* 275 Pa.Super. 324, 418 A.2d 744, 748 (1980). "Only when compelling reasons exist, such as a court's improper acceptance of a guilty plea, is a court permitted, after the Commonwealth's case had commenced and a guilty plea entered, to allow the withdrawal of the plea of guilty." *Commonwealth v. Whelan,* 481 Pa. 418, 422, 392 A.2d 1362, 1364 (1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 481 (1979).

 In the instant case, Appellant proceeded to a jury trial on numerous sex offenses perpetrated on his niece over the period of eight years from the time she was five years old until she was thirteen years old. The jury trial lasted from September 11, 2012 through September 17, 2012. The impaneled jury heard opening statements, testimony from fifteen witnesses, including the victim and Appellant, closing arguments, and the court's jury instructions. During deliberations, the jury asked the court two questions, which the court answered in the presence of Appellant, his attorney, and the Commonwealth. At approximately 7:30 p.m., the jury foreperson informed the court officer that the jury did not think it could reach a unanimous verdict on some of the charges. The court disclosed this communication to the parties. After discussing this issue

with the parties, the court summoned the jury to the courtroom and confirmed that the jury was unable to reach a unanimous verdict on all of the charges. The court read the "deadlocked" jury instruction to the jury. The court asked the jury to return at 9:00 a.m. on September 18, 2012, to resume deliberations.

After the parties left the courtroom on September 17, 2012, but before the jury left for the day, the jury foreperson gave a note to the court officer. Upon determining that the note did not contain a question from the jury, the court officer returned the note to the jury foreperson and then informed the court of the content of the note. The court instructed the court officer to retrieve the note from the jury foreperson at 9:00 a.m. on September 18, 2012. On September 18, 2012, the court initially met with counsel in chambers and allowed them to review the note, which set forth the jury's numerical split regarding all of the charges. The court reinstructed the jury on Pennsylvania Standard Jury Instruction 2.09, "Deliberations and Verdict: Deadlocked Jury," and asked the jury to resume deliberations. At approximately 10:00 a.m., the jury foreperson informed the court officer that the jury had reached a solid verdict on some of the charges but could not reach a unanimous verdict as to other charges. The court informed counsel that the jurors were to be brought into the courtroom, and the court was prepared to take a partial verdict.

Upon this information, Appellant and his attorney requested a recess. Following the recess, defense counsel and the prosecutor informed the court that they had reached a plea and sentence agreement. Appellant would plead guilty and allocute to the charges of (1) indecent assault of a person under 13 years old; (2) endangering the welfare of children; and (3) corrup-tion of minors. The plea agreement further provided for a state sentence of a minimum period of thirty (30) months to a maximum period of sixty (60) months, followed by thirty-six (36) months of probation. Appellant completed a written guilty plea colloquy and a written addendum to the sentencing colloquy for registration of sex offenders. The court also conducted a detailed oral guilty plea colloquy. The court accepted Appellant's guilty plea, ordered a SOAB assessment, and deferred sentencing to permit completion of the SOAB assessment. The court also discharged the jury without entering a verdict on any of the charges.

On December 13, 2012, Appellant filed a motion to withdraw his guilty plea on the ground that he was factually innocent of all charges filed against him. On December 21, 2012, the court held an evidentiary hearing on the motion. At the hearing, the Commonwealth vigorously asserted it would be substantially prejudiced by the withdrawal of the guilty plea under the specific circumstances of this case where, *inter alia,* Appellant heard the Commonwealth's case, saw the jury's reactions, and knew, at the time of his guilty plea, what his sentence would be.

 Initially, we observe Appellant's plea agreement included a negotiated sentence. The trial court accepted the guilty plea with the negotiated sentence. Because Appellant was fully aware of the sentence he would receive, the "manifest injustice" standard applied. *See Lesko, supra.* Further, Appellant failed to show that his guilty plea was not knowing, intelligent or voluntary. *See Gunter, supra.* Here, the trial court also advised Appellant at the guilty plea colloquy that he had the right to withdraw his plea before sentencing. *See Killinger, supra.* The court also made clear to Appellant that any motions to withdraw his plea might be denied.

The trial court had no duty to inform Appellant that a more stringent standard applied to the withdrawal of his guilty plea under the particular circumstances of his case. *See Chumley, supra; McClendon, supra.* Therefore, we see no error in the court's application of the "manifest injustice" standard to Appellant's pre-sentence motion to withdraw his guilty plea.

Moreover, Appellant would not be entitled to withdraw his plea even under the "fair and just" *Forbes* standard. Although Appellant's assertion of factual innocence qualified as a "fair and just" reason to withdraw his guilty plea, our analysis would not end there, because Appellant entered his plea after he saw the Commonwealth's case-in-chief, the defense's case, and the effects they had on the jury. Withdrawal of his plea at this juncture would substantially prejudice the Commonwealth. Appellant saw the jury's reaction throughout trial and was privy to a straw vote indicating which way the jury was leaning on all of the charges. With that information, Appellant could use the withdrawal of his guilty plea to obtain a new, more favorable jury and tailor his trial strategy, based on the extensive information he learned from his first trial. *See Morales, supra.* These circumstances placed the Commonwealth in a substantially worse position than it would be in if the trial court had just entered a partial verdict in the first trial and declared a mistrial on the undecided offenses. *See Kirsch, supra.* Absent any compelling reasons, such as the court's improper acceptance of the plea, Appellant cannot show the trial court erred in refusing to allow him to withdraw his guilty plea entered after the Commonwealth had presented its case. *See Whelan, supra.* Therefore, the trial court properly denied Appellant's pre-sentence motion to withdraw his guilty plea. Thus, Appellant's first issue merits no relief.

In his second issue, Appellant challenges his SVP status as based on unreliable hearsay. Specifically, Appellant asserts the SOAB expert witness formed her opinion using "unproven allegations" contained in police reports, the affidavit of probable cause, polygraph examination reports, and other documents of record. Appellant insists the information contained in these documents made the SOAB expert's opinion inadmissible because the information had not been established by testimony at the SVP hearing or by admission of Appellant. Appellant contends reliance on the trial testimony in this case was prohibited because the Commonwealth did not move to admit it. Moreover, as no verdict was rendered at trial, the court could not deem the allegations proven on that basis. According to Appellant, the only facts the SOAB expert witness should have considered were the facts contained in his guilty plea colloquy, and Appellant's counsel made a timely objection that the court overruled. Appellant concludes the court abused its discretion by allowing the SOAB expert witness to render an opinion based on unproven allegations, over Appellant's objections, and he is entitled to a new SVP hearing as a result. We disagree.

▬▬ A challenge to a determination of SVP status requires us to view the evidence:

[I]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.

*Commonwealth v. Plucinski,* 868 A.2d 20, 25 (Pa.Super.2005) (internal citations and quotation marks omitted). The scope of review is plenary. *Commonwealth v. Brooks,* 7 A.3d 852 (Pa.Super.2010), *appeal denied,* 610 Pa. 614, 21 A.3d 1189 (2011). "[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is **itself** evidence." *Commonwealth v. Fuentes,* 991 A.2d 935, 944 (Pa.Super.2010) (en banc), *appeal denied,* 608 Pa. 645, 12 A.3d 370 (2010) (emphasis in original).

▮ A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. *Commonwealth v. Meals,* 590 Pa. 110, 119, 912 A.2d 213, 218 (2006). The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. *Commonwealth v. Baker,* 24 A.3d 1006, 1035 (Pa.Super.2011). A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing. *Commonwealth v. Sanford,* 580 Pa. 604, 608–09, 863 A.2d 428, 431 (2004) (distinguishing concepts of sufficiency of evidence versus admissibility of evidence, but refusing to render any opinion on whether SVP expert's "reliance on the affidavit of probable cause and the charging documents somehow rendered her testimony inadmissible as this issue is not before this court").

> As a general rule, [the] standard of review of a trial court's evidentiary ruling … is limited to determining whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Dengler,* 586 Pa. 54, 65, 890 A.2d 372, 379 (2005) (internal citations and quotation marks omitted). Our task in either scenario is one of review, not one of reweighing or assessing the evidence in the first instance. *Meals, supra* at 127, 912 A.2d at 223.

▮ "After conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a). Section 9799.24(b) provides:

### § 9799.24. Assessments

\* \* \*

**(b) Assessment.**—Upon receipt from the court of an order for an assessment, a member of the board … shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

> (1) Facts of the current offense, including:
>
> > (i) Whether the offense involved multiple victims.
> >
> > (ii) Whether the individual exceeded the means necessary to achieve the offense.
> >
> > (iii) The nature of the sexual contact with the victim.
> >
> > (iv) Relationship of the individual to the victim.
> >
> > (v) Age of the victim.
> >
> > (vi) Whether the offense included a display of unusual cruelty by the

individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

\* \* \*

42 Pa.C.S.A. § 9799.24(b). An SOAB board member conducts the assessment to determine if the individual should be classified as an SVP. *Id.* The SOAB merely assesses the defendant; it does not perform an adjudicative function. *Commonwealth v. Kopicz,* 840 A.2d 342, 351 (Pa.Super.2003). The statute dictates the factors for the expert to consider when making an SVP analysis:

[T]he "science" here (and the SVP designation consequences it triggers) is responsive to, indeed it is a direct byproduct of, a specific legislatively-adopted scheme which sets forth the relevance and contours of the challenged evidence. The General Assembly has determined

that a sexual offender's SVP status is significant to the operation of the registration and notification provisions of the law. The Assembly has defined the triggering term ("sexually violent predator") and has set forth the factors to be considered in making that determination. This scheme represents a legislative policy judgment concerning the proper response to certain sexual offenders. The question of SVP status is thus a statutory question, ... and, at least in the absence of a challenge to the propriety of the substance of the statute, the question of evidentiary relevance is framed by the very provisions of the statute itself, not some external source.

*Dengler, supra* at 71, 890 A.2d at 383 (holding: "Because the legislature provided the framework for assessing whether an offender is an SVP, expert testimony tracking that framework, by definition, should be deemed generally accepted in the community of professionals who conduct SVP assessments. The testimony of a credentialed psychologist or psychiatrist conducting an SVP assessment which follows the statutory formula for an assessment cannot be deemed 'novel science' and therefore no *Frye*[4] hearing is necessary"). Therefore, the salient statutory inquiry for SVP designation:

[I]s identification of the impetus behind the commission of the offense; that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question determines, at least theoretically, the extent to which the offender is likely to reoffend, and [S]ection [9799.24] provides the criteria by which such likelihood may be gauged.

*Plucinski, supra* at 26.

"To deem an individual a sexually violent predator, the Commonwealth must first

---

4. *Frye v. United States,* 293 F. 1013 (App.D.C. 1923).

show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14]....' " *Commonwealth v. Askew*, 907 A.2d 624, 629 (Pa.Super.2006), *appeal denied*, 591 Pa. 709, 919 A.2d 954 (2007). *See also* 42 Pa.C.S.A. § 9799.12. "Secondly, the Commonwealth must show that the individual has 'a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses.' " *Askew, supra.* When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP. *Kopicz, supra.*

■ An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. *Commonwealth v. Howe*, 842 A.2d 436, 445–46 (Pa.Super.2004). SVP status, therefore, does not require proof beyond a reasonable doubt; the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP. *Commonwealth v. Killinger*, 585 Pa. 92, 104, 888 A.2d 592, 600 (2005).

Rule 702 of the Pennsylvania Rules of Evidence provides:

**Rule 702. Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

*Comment:*

* * *

■ Pa.R.E. 702 states that an expert may testify in the form of an "opinion or otherwise." Much of the literature assumes that experts testify only in the form of an opinion. The language "or otherwise" reflects the fact that experts frequently are called upon to educate the trier of fact about the scientific or technical principles relevant to the case. Pa.R.E. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Pa.R.E. 703; *In re D.Y.*, 34 A.3d 177, 182–83 (Pa.Super.2011), *appeal denied*, 616 Pa. 638, 47 A.3d 848 (2012). "If the expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705 and *Comment* (explaining otherwise inadmissible facts and data supporting expert opinion are considered only to explain basis for expert's opinion, not as substantive evidence). "Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *In re D.Y., supra* at 183. Opposing counsel bears the burden of exposing and exploring "any weaknesses in the underpinnings of the expert's opinion." *Id.*

■ "With regard to the various assessment factors ..., there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation."

*Brooks, supra* at 863. Thus, "[t]he Commonwealth does not have to show that any certain factor is present or absent in a particular case." *Id.* Moreover, "the absence of an interview does not preclude the ability to evaluate the offender's behavior through available history for characteristics similar or dissimilar to the criteria set forth in the law for defining a sexually violent predator." *Commonwealth v. Woods,* 909 A.2d 372, 381 (Pa.Super.2006), *appeal denied,* 591 Pa. 714, 919 A.2d 957 (2007). Likewise, "to carry its burden of proving that an offender is an SVP, the Commonwealth is not obliged to provide a clinical diagnosis by a licensed psychiatrist or psychologist ..." *Commonwealth v. Conklin,* 587 Pa. 140, 158, 897 A.2d 1168, 1178 (2006). Additionally, the statute requires all state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB in connection with an SVP assessment. 42 Pa.C.S.A. § 9799.24(c). Importantly, the primary purpose of the registration requirements is to help ensure the safety of the public, not to punish the offender. *Commonwealth v. Carter,* 821 A.2d 601, 606 (Pa.Super.2003) (holding SOAB expert can review confidential psychiatric examinations performed when defendant was juvenile to make SVP assessment).

Instantly, Appellant pled guilty to indecent assault of a person under thirteen (13) years old, endangering the welfare of children, and corruption of minors. Specifically, the following exchange occurred during the guilty plea hearing:

[COMMONWEALTH]: Your Honor, [Appellant] is the uncle of the victim in this matter, the victim being [S.P.], she's now 21. [Appellant], as her uncle, as [S.P.] was in the care of [Appellant] on various occasions throughout her life, primarily between the ages of 5, all the way up until she was 13, [Appellant] did

have indecent contact, indecent sexual contact with the victim on numerous occasion throughout that period of time. [Appellant] also, in that indecent contact, did have contact with the victim's vaginal area with his hand.

THE COURT: Is that what happened, [Appellant]?

[APPELLANT]: That's what I'm being charged with and that's what I'm agreeing to, yes, Your Honor.

THE COURT: You have to do better than that. Is that what happened, [Appellant]? Did you do that? Did you touch [S.P.]'s vagina for the purposes of arousing sexual desire to yourself?

[APPELLANT]: Yes.

THE COURT: Are you sure?

[APPELLANT]: Yes.

\* \* \*

(N.T. Guilty Plea, 9/18/12, at 37–38; R.R. at 273a–274a). After accepting Appellant's guilty plea, the court ordered an SOAB assessment to determine whether Appellant met the criteria for SVP classification. Dr. Veronique Valliere, a licensed psychologist and member of the SOAB, performed Appellant's assessment and prepared a written report. On January 11, 2013, an evidentiary hearing took place, in which Dr. Valliere testified that Appellant had declined to be interviewed during the SVP assessment process. She further testified that, in performing her assessment, she relied on information contained in numerous written records, including the arrest warrant, affidavit of probable cause, police reports, charge sheets, victim's statement, polygraph examinations, a handwritten letter by Appellant's ex-wife, records from the Northampton County Division of Children, Youth and Families, the report by the SOAB investigator, and the court's order requesting the assessment. The SOAB expert witness did not consider the

testimony from either the trial or the guilty plea hearing.

■ In response to Appellant's second issue, the trial court reasoned as follows:

[T]he rules of evidence permit experts to rely on hearsay evidence, provided it is of a type typically relied on by experts in the relevant field. *See* Pa.R.E. 703. Dr. Valliere testified that the records she relied on were typical of those relied on by psychologists in performing assessments and forming expert opinions. Experts in sex offender assessment routinely rely on such evidence, and their opinions are routinely admitted at SVP hearings; in fact, Dr. Valliere's own methodology has been accepted and viewed favorably by the Pennsylvania Supreme Court. *See Dengler[, supra]* at 387 (Dr. Valliere's opinion based on review of records rather than interview of defendant could not be excluded as "novel" science under *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923))....

Based on the rules of evidence and the [relevant cases], Dr. Valliere properly relied on the hearsay records she reviewed, because those records are typically relied upon by experts in performing sex offender assessments. We have no basis on which to reject those cases, notwithstanding any suggestion by the appellate courts that they may be prepared to reexamine the issue.

(Trial Court Opinion at 50–51) (most internal citations omitted). We agree with the court's analysis. Given that an SVP hearing is not a trial and the primary purpose of the SVP registration requirements is to protect the public, not to punish the offender, the Commonwealth had to prove Appellant was subject to SVP status only by clear and convincing evidence. *See Killinger, supra; Howe, supra; Carter, supra.* Prior to Appellant's SVP hearing, Dr. Valliere performed an assessment of Appellant, pursuant to the dictates of Section 9799.24. When performing her assessment, she consulted the statutory factors set forth in Section 9799.24(b). Observing the specific nature of the factors set forth in Section 9799.24(b), Dr. Valliere's assessment required inquiry into facts that might not have been proven beyond a reasonable doubt at trial or in the guilty plea proceedings. Undeniably, the lack of interview with Appellant did not prevent his SVP classification. Dr. Valliere's expert opinion was not diagnostic; instead it conscientiously tracked the statutory framework. *See Conklin, supra; Dengler, supra.* Further, Dr. Valliere's assessment was not performed as an adjudicatory function or binding on the court. *See Fuentes, supra; Kopicz, supra.* Instead, her opinion was evidence for the trial court to consider when making its SVP decision. *See Fuentes, supra.* The trial court was free to give as much or as little weight to Dr. Valliere's opinion as the court deemed proper. *See Brooks, supra.*

■ The SVP assessment is statutorily defined. The statute governing the SVP assessment does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings. In fact, the statute requires state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB in connection with an SVP assessment, without limitation on the "admissibility" of that information. *See* 42 Pa.C.S.A. § 9799.24(c). As a result, it stands to reason that some if not many of the facts necessary to perform the SVP assessment might not have been proven beyond a reasonable doubt. Thus, we hold an SOAB expert opinion falls within the general rules regarding expert witnesses. As such, a SOAB expert's opinion may be

based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted. *See* Pa.R.E. 702, 703; *In re D.Y.*, *supra*. The SOAB expert must state the facts or data on which the opinion is based. *See* Pa.R.E. 705 and *Comment* (explaining otherwise inadmissible facts and data supporting expert opinion are considered only to explain basis for expert's opinion, not as substantive evidence). Then, the rules of evidence place "the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *See In re D.Y.*, *supra* at 183. Opposing counsel bears the burden of exposing and exploring "any weaknesses in the underpinnings of the expert's opinion." *See id.*

Moreover, on cross-examination, defense counsel read the entire guilty plea colloquy to Dr. Valliere and asked her whether the transcript changed her opinion. Dr. Valliere stated unequivocally that Appellant met SVP classification based solely on the facts and admissions contained in the guilty plea colloquy, which established that Appellant had committed and been convicted of a sexually violent offense and had the mental abnormality of pedophilia. *See Askew, supra.* The trial court explained why the guilty plea colloquy sufficed as follows:

Even if the [c]ourt had excluded all evidence except the facts admitted in [Appellant's] guilty plea colloquy, the evidence would still be sufficient to support the [c]ourt's determination that [Appellant] is an SVP. At his guilty plea colloquy, [Appellant] admitted to the [facts set forth above]. Defense counsel read [Appellant's] guilty plea colloquy to Dr.

Valliere verbatim, and Dr. Valliere testified that the facts admitted in the guilty plea colloquy would have been sufficient, standing alone, to support her opinion that [Appellant] was an SVP. Those facts alone supported Dr. Valliere's opinion on three issues that, taken together, were sufficient to classify [Appellant] as an SVP. First, they establish that [Appellant] suffers from the "mental abnormality" of pedophilia.

Pedophilic arousal is diagnostically defined as repeated sexual contact with a prepubescent child over a 6 month period, so it appears the guilty plea captures that more than adequately . . . to indicate to the [c]ourt that he does have a mental abnormality as defined by the statute.

Second, the facts admitted in the guilty plea colloquy established that [Appellant] abused a young child over a period of several years, which demonstrates that he is likely to reoffend.

[P]edophilia . . . is considered an acquired[ . . . ]or attained condition that is considered to last a lifetime. Once a pattern of sexual deviance is established, it cannot be cured[;] it can only be managed and predisposes that person over their lifetime to commit future acts of sexual victimization.

*Id.* Third, the facts admitted in the guilty plea colloquy established that [Appellant] exploited a family relationship to have the child repeatedly placed in his care, which is "predatory" behavior. Dr. Valliere explained:

Yes, though he had access to this particular victim through a familial relationship, I believe he was her uncle, he promoted a secretive relationship in order to facilitate his ability to victimize her using a variety of techniques to ensure her lack of disclosure

throughout the time he victimized her. So that does meet the statutory definition for predatory behavior.

The case law confirms Dr. Valliere's opinion that these facts are sufficient to support an SVP determination.... Thus, to the extent that Dr. Valliere's opinion relied upon facts not admitted in the guilty plea colloquy, those facts were not necessary to Dr. Valliere's opinion or the [c]ourt's determination, and any error in considering them was therefore harmless.

\* \* \*

As noted above, even if the [c]ourt were to hold that Dr. Valliere is not permitted to rely on "unproven" hearsay evidence, her opinion would still be admissible, because she testified that the facts admitted by [Appellant] in his guilty plea colloquy were sufficient, standing alone, to support her opinion that he is an SVP. In the alternative, assuming *arguendo* that the facts admitted in the guilty plea were insufficient to support Dr. Valliere's opinion, virtually all of the facts she relied upon were the subject of sworn testimony at trial, where [Appellant] was permitted to cross-examine the witnesses, and were therefore "proven."

It was not necessary that Dr. Valliere read the guilty plea colloquy and trial testimony before forming her opinion. The facts upon which an expert relies can be disclosed either by asking the expert to "assume the truth of facts the expert has seen or read" or by asking a "hypothetical question." *See* Pa.R.E. 705, comment. It is the [c]ourt, not the expert, [which] finds the facts and makes the ultimate determination whether a defendant is an SVP. In essence, Dr. Valliere assumed, hypothetically, that [Appellant] had committed the criminal conduct set forth in the documents she reviewed and rendered

her opinion that, based on those assumed facts, [Appellant] is an SVP. The [c]ourt, as the finder of fact, determined whether the facts assumed by Dr. Valliere were true and weighed her opinion accordingly.

\* \* \*

(Trial Court Opinion at 51–53, 55) (most internal citations omitted). Dr. Valliere was permitted to rely on documents other than just the guilty plea transcript to form her opinion on Appellant's status as an SVP. *See* Pa.R.E. 703. Although these documents were prepared by other persons, Dr. Valliere attested she had reviewed and relied on numerous written records as part of her assessment, including the arrest warrant, affidavit of probable cause, police reports, charge sheet, statements by the victim, *etc.* and confirmed that these records are ones typically relied on in SOAB evaluations. (*See* N.T. SVP Hearing, 1/13/13, at 6; R.R. at 355a.) *See also* Pa.R.E. 703, 705. Therefore, we hold Appellant's challenge to his SVP status as based on inadmissible hearsay merits no relief. *In re D.Y., supra.*

Finally, with regard to Appellant's claim that Dr. Valliere's assessment was based on "unproven allegations" contained in documents such as the affidavit of probable cause, *etc.*, Appellant fails to state with specificity which "unproven" facts led to his challenge to the expert report as inadmissible. Appellant's general hearsay objection to the assessment was insufficient to call into question the integrity of Dr. Valliere's report. *See generally Carter, supra* at 610 (Concurring Opinion). Thus, the trial court properly considered Dr. Valliere's expert report when determining if Appellant met the criteria for SVP classification. In sum, the record supports the court's decision. *See Fuentes, supra; Plucinski, supra.*

Based upon the foregoing, we hold the trial court properly applied the "manifest injustice" standard under the circumstances of this case to deny Appellant's pre-sentence motion to withdraw his guilty plea. We also hold an SOAB expert assessment falls under the general rules regarding expert witnesses and may be based on facts or data that the expert has been made aware of or personally observed, so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible or proved beyond a reasonable doubt in order to find the expert opinion admissible. Accordingly, we affirm.

Judgment of sentence affirmed.