J.S43042/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL ANTHONY MASON, | : | |
| | : | |
| Appellant | : | No. 3009 EDA 2013 |

Appeal from the Judgment Entered September 27, 2013
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0000805-2012

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 24, 2014**

Appellant, Paul Anthony Mason, appeals from the judgment of sentence entered in the Northampton County Court of Common Pleas following his guilty plea to indecent assault[1] and corruption of minors.[2] Appellant challenges his designation by the trial court as a sexually violent predator ("SVP") under the Sexual Offender Registration and Notification Act[3] ("SORNA"). We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3126(a)(1).

[2] 18 Pa.C.S. § 6301(a)(1).

[3] 42 Pa.C.S. §§ 9799.10-9799.41 (effective Dec. 20, 2012).

We adopt the facts and procedural history set forth by the trial court. *See* Trial Ct. Op., 3/4/14, at 1-10. We reiterate that Appellant's own expert testified at the SVP hearing that Appellant met the criteria for classification as a SVP. *Id.* at 9. Appellant timely appealed on Monday, October 28, 2013, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issue:

> Did the trial court err as a matter of law and/or abuse its discretion in finding Appellant to be a sexually violent predator . . . pursuant to 42 Pa.Cons.Stat. § 9792 [sic[4]]?

Appellant's Brief at 5.

Appellant suggests that he did not meet several of the statutory criteria defining a SVP. He maintains he did not abuse multiple children simultaneously, did not engage in violence or obsessive force, was not sexually aroused by "cruelty, humiliation, or terror" of his victim, and did not select his victim by looking for preexisting vulnerabilities. *Id.* at 16. Appellant also opines that the court failed to weigh his bipolar disorder properly.[5] We hold Appellant is not entitled to relief.

We state the standard of review as follows:

> A challenge to a determination of SVP status requires us to view the evidence:

---

[4] We note that 42 Pa.C.S. § 9792 expired on December 20, 2012, prior to Appellant's SVP hearing.

[5] As noted above, Appellant's argument relies on a statute that expired prior to his SVP hearing; we decline to find waiver, however.

> In the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue.

The scope of review is plenary. An expert's opinion, which is rendered to a reasonable degree of professional certainty, is **itself** evidence.

A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing.

> As a general rule, the standard of review of a trial court's evidentiary ruling is limited to determining whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

Our task in either scenario is one of review, not one of reweighing or assessing the evidence in the first instance.

***Commonwealth v. Prendes***, ___ A.3d ___, 2014 WL 3586262, at *14-*15

(Pa. Super. July 22, 2014) (citations and punctuation omitted).

J. S43042/14

As a prefatory matter, we acknowledge Appellant's argument relies on a statute that expired prior to his SVP hearing. Because SORNA is substantially identical to the expired statute and the trial court applied SORNA, we decline to find waiver.

After careful review of the record, the parties' briefs, and the well-reasoned decision by the Honorable Anthony S. Beltrami, we affirm based on the trial court's opinion. **See** Trial Ct. Op. at 2-18 (rendering extensive findings of fact and conclusions of law; holding, *inter alia*, (1) each statutory factor need not be met and weight given to factors is left to court's discretion; (2) absence of Appellant's sexual arousal by, *inter alia*, cruelty, is not SVP factor; (3) record established Appellant selected victim based on mental capacity; and (4) court considered Appellant's bipolar disorder). Accordingly, because the record substantiates the trial court's factual findings and we discern no error of law or abuse of discretion, we affirm the judgment of sentence. **See Prendes**, ___ A.3d at ___, 2014 WL 3586262, at *14-*15.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2014

- 4 -

IN THE COURT OF COMMON PLEAS OF
NORTHAMPTON COUNTY, PENNSYLVANIA
CRIMINAL

| COMMONWEALTH OF PENNSYLVANIA | ) | |
| | ) | No. 805-2012 |
| v. | ) | |
| | ) | |
| PAUL ANTHONY MASON, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION PURSUANT TO Pa.R.A.P. 1925(a)**

The defendant, Paul Anthony Mason ("Appellant"), has appealed to the Superior Court of Pennsylvania from this Court's September 27, 2013, judgment of sentence, challenging the Court's determination that he is a sexually violent predator. This memorandum opinion is filed pursuant to Pa.R.A.P. 1925(a).

On February 4, 2013, Appellant entered an open guilty plea to one count of indecent assault as a misdemeanor of the second degree, pursuant to 18 Pa.C.S.A. § 3126(a)(1), and one count of corruption of minors as a misdemeanor of the first degree, pursuant to 18 Pa.C.S.A. § 6301(a)(1).[1] At

---

[1] Although Appellant entered an open guilty plea, at the time of the plea, the Commonwealth and Appellant had negotiated a recommended sentence of three to six

1

the time of the plea, Appellant admitted that he rubbed the breasts and vagina of his adopted daughter, A.M., from the time she was eight years old until she was twelve. (N.T., 2/4/2013, at 10:11-21.) In exchange for the guilty plea, charges of involuntary deviate sexual intercourse with a child, involuntary deviate sexual intercourse, aggravated indecent assault, aggravated indecent assault of a child, and endangering welfare of children were withdrawn. The Court ordered a pre-sentence investigation and an assessment by the Sexual Offenders Assessment Board. Sentencing was scheduled for May 10, 2013. By agreement of the parties, the sentencing was subsequently continued to September 27, 2013.

On September 27, 2013, prior to Appellant's sentencing, a hearing was held, pursuant to 42 Pa.C.S.A. § 9799.24(e), to determine whether Appellant is a sexually violent predator. At the conclusion of the hearing, the Court determined that Appellant is a sexually violent predator, requiring lifetime registration as a sex offender. (N.T., 9/27/2013, at 94:11-16). The Court sentenced Appellant to three to six months in Northampton County Prison followed by eighteen months of probation on the indecent assault charge and a consecutive period of sixty months of probation on the corruption of minors charge.

---

months in Northampton County Prison followed by a period of probation. (N.T., 2/4/2013, at 11:19-12:10.) This recommendation was not binding on the Court. (*Id.* at 12:11-15.)

2

At the time of the plea and sentencing, Appellant was represented by Paul J. Levy, Esquire. On October 28, 2013, Attorney Levy filed the instant appeal to the Superior Court. On the same date, Attorney Levy filed a Motion to Appeal in Forma Pauperis. On November 4, 2013, unbeknownst to the undersigned, Attorney Levy filed a "Petition to Withdraw as Counsel and Appoint Legal Representation." That Petition was presented to the Honorable Craig A. Dally in Motions Court on the same date. Judge Dally granted the Petition and entered an Order on November 4, 2013, granting Attorney Levy permission to withdraw his appearance for Appellant and directing Appellant to apply for a public defender.

On November 5, 2013, the undersigned entered an Order requiring Appellant to file a concise statement of matters complained of on appeal ("Concise Statement"), pursuant to Pa.R.A.P. No. 1925(b), within twenty-one days. Unaware that Attorney Levy had been granted permission to withdraw his appearance for Appellant, the undersigned served that Order on Attorney Levy. On November 6, 2013, Attorney Levy filed a Praecipe for Withdrawal, withdrawing his appearance for Appellant. Attorney Levy did not serve a copy of the Praecipe on the undersigned.[2] On November 12, 2013, the Court entered an Order permitting Appellant to proceed in forma pauperis.

---

[2]     A Certificate of Service attached to the Praecipe indicates that a copy was mistakenly served on the Honorable Stephen G. Baratta.

3

On December 11, 2013, Assistant Public Defender Rory Driscole, Esquire entered his appearance for Appellant. Upon discovering that Attorney Levy had withdrawn his appearance without filing a Concise Statement, the Court entered an Order on December 13, 2013, that vacated the prior Order requiring Appellant to file a Concise Statement by November 26, 2013, and directed him to file a Concise Statement within twenty-one days of December 13, 2013, or by January 3, 2014.

On January 3, 2014, Attorney Driscole filed a Concise Statement, in which Appellant contends that the Court erred as a matter of law and/or abused its discretion in determining that he is a sexually violent predator. Appellant argues that he is entitled to the removal of that designation or to a new hearing on the issue.

The following facts were established at the hearing held on September 27, 2013. On April 23, 2013, Veronique Valliere, Psy.D. completed an assessment of Appellant, pursuant to 42 Pa.C.S.A. § 9799.24(b). Dr. Valliere's assessment report was admitted into evidence, without objection, as Commonwealth's Exhibit 1. (N.T., 9/27/2013, at 52:19-24.) Appellant's counsel notified Dr. Valliere, in writing, that Appellant would not be participating in the assessment. (*Id.* at 8:20-22; Ex. C-1 at 2.) Thus, the assessment was conducted solely by a review of the available records, offense information, and collateral information. (N.T., 9/27/2013, at 8:23-

9:6.) The records and information reviewed are identified on pages one and two of the report. (Ex. C-1 at 1-2.)

The report contained the following information. Appellant sexually abused his adoptive sister, T., when she was a young girl. (*Id.* at 2-3.) T. reported that she kept it a secret until her daughter, W., reported that Appellant had sexually assaulted her as well. (*Id.*) T. reported that Appellant first sexually abused her when she was in the fourth grade. (*Id.* at 3.) During a camping trip with their parents, Appellant got on top of T. in the middle of the night and penetrated her vagina with his penis. (*Id.*) Several weeks after the incident, Appellant told T. that he would drive her to a bowling alley to meet her friends. (*Id.*) Instead, Appellant parked on a side street and told T. to sit on top of him, penetrating her vagina with his penis. (*Id.*)

On February 22, 2011, T.'s daughter, W., who is Appellant's niece, reported to one of her teachers that she had been sexually assaulted by Appellant. (*Id.* at 2.) W. was seventeen at the time of disclosure. (*Id.*) W. could not remember when the assaults began but reported that they stopped in late 2010. (*Id.*) According to W., Appellant would walk into the bathroom while she was using it and would refuse to leave. (*Id.*) He also used the bathroom with the door open. (*Id.*) W. also once caught Appellant peeping at her through her bedroom window. (*Id.*) Appellant told W. she was "sexy" and "how lucky he would be to have her." (*Id.*) He once touched W.'s

5

breast under her shirt. (*Id.*) Appellant also showed W. text messages from his girlfriend, who sent pictures of her genitals to Appellant. (*Id.*) Appellant told W. "that he was a swinger and that his wife never gave him enough sex." (*Id.*) While watching television with W., Appellant made inappropriate comments about women and once exposed his genitals to her. (*Id.*) The final assault on W. occurred when she came home from school with bad stomach pain one day. (*Id.*) Appellant offered to massage her stomach. (*Id.*) During the massage, he unbuttoned W.'s pants and put his hand quickly down her underwear. (*Id.* at 3.) When W.'s father walked into the room, Appellant quickly re-buttoned her pants. (*Id.*) At the time of the hearing, Appellant was facing charges of sexual assault in Lehigh County stemming from the incidents involving W. (*Id.*)

While police were investigating W.'s disclosure, they also learned that Appellant had assaulted A.M., the victim in the instant case, who is Appellant's adopted daughter. (*Id.*) A.M. was eighteen at the time of disclosure in March 2011. (*Id.* at 3.) A.M. reported that Appellant began sexually assaulting her when she was eight and continued assaulting her until she was twelve. (*Id.*) When she was eight, Appellant began to talk to A.M. about sex and told her about puberty and "how and why girls get wet." (*Id.*) When A.M. was eight, Appellant came into her room and put his hand under her shirt and touched her breasts. (*Id.*) Thereafter, Appellant began coming into A.M.'s room and assaulting her at night. (*Id.*) Appellant would

6

put his hand inside A.M.'s underwear and would rub her genitals. (*Id.*) Three or four times, he digitally penetrated A.M.'s vagina. (*Id.*) During the four years that he abused her, Appellant would also force A.M. to rub his penis. (*Id.*) "On multiple occasions, [Appellant] grabbed [A.M.'s] head and forced her to suck his penis. The abuse went on for approximately [four] years." (*Id.*)

During the investigation of W.'s disclosure, police also discovered that Appellant had sexually assaulted his brother's wife and his brother's minor daughter, Appellant's niece, A. (*Id.* at 2-3.) When she was eleven, A. caught Appellant peeping at her. (*Id.* at 3.) He also sexually touched her. (*Id.* at 2.) Appellant showed naked pictures of himself to his sister-in-law, inappropriately touched her, stood naked in front of her, and forced her to sit on his lap when he was naked. (*Id.* at 2-3.) These assaults continued for several years and only stopped after Appellant's brother threatened to kill Appellant. (*Id.* at 3.) However, Appellant sexually assaulted A. again when she was nineteen, offering to give her a massage when she was sick and rubbing her breasts in the process. (*Id.*)

Appellant's adoptive parents were foster parents. (*Id.* at 3.) Two former foster children who lived with Appellant were interviewed by police. (*Id.*) One woman, who was fifteen when she lived with Appellant, told police that she would wake up during the night and would see Appellant watching her and her foster sister. (*Id.*) Appellant would ask her for sex and would

7

rub her shoulder. (*Id.*) She remembers something happening to her in a shed but could not remember exactly what happened. (*Id.*) She ran away from the home after the incident. (*Id.*) She also reported to police that Appellant abused her fourteen-year-old foster sister. (*Id.*) She witnessed Appellant penetrate her foster sister vaginally and saw her foster sister crying while sucking Appellant's penis. (*Id.* at 3-4.)

Dr. Valliere concluded that Appellant suffers from the mental abnormality known as pedophilia, "which is described as behaviors, thoughts, or fantasies that demonstrate a sexual arousal for prepubescent children." (*Id.* at 7; N.T., 9/27/2013, at 10:10-19.) Dr. Valliere also concluded that Appellant is likely to engage in predatory sexually violent offenses in the future. (*See* Ex. C-1 at 7; N.T., 9/27/2013, at 13:17-14:16, 16:8-20:25.) Accordingly, Dr. Valliere offered the opinion that Appellant "clearly meets the criteria for classification" as a sexually violent predator. (N.T., 9/27/2013, at 21:2-9.)

Appellant's expert, Dr. Ilan Levinson, M.D., also testified at the sentencing hearing.[3] Dr. Levinson conducted a sexual offender evaluation of Appellant based on an interview with Appellant, and a review of Dr. Valliere's report, hospital records of Appellant, A.M.'s preliminary hearing testimony, and Lehigh County docket entries. (Ex. D-1 at 1.) Dr. Levinson's report concluded that Appellant suffers from bipolar disorder and panic disorder.

---

[3]     The parties agreed that Dr. Levinson could testify via telephone.

8

(*Id.* at 3.) Dr. Levinson initially opined that Appellant did not meet the criteria for classification as a sexually violent predator. (N.T., 9/27/2013, at 75:3-11.) In this regard, Dr. Levinson testified that he disagreed with Dr. Valliere's finding because she did not interview Appellant, did not review his medical records, and relied on information that Dr. Levinson alleged was not part of Appellant's legal history. (*Id.* at 72:22-74:2.) Dr. Levinson's report states that "it is unclear what the age of the victim was during the alleged offense." (Ex. D-1 at 3.) In opining that he disagreed with Dr. Valliere that Appellant suffers from pedophilia, Dr. Levinson testified that, in the instant case, "there is much confusion about the age of the victim and the offenses which [Appellant] actually committed." (N.T., 9/27/2013, at 73:15-74:2.) Later in his testimony, Dr. Levinson stated, "The only part that I'm very unclear about is the age [of the victim, A.M.]" (*Id.* at 90:14-15.) When read portions of Appellant's sworn testimony from the guilty plea, in which Appellant acknowledged that A.M. was between the ages of eight or nine through twelve when he rubbed her breasts and vagina, Dr. Levinson agreed that Appellant meets the criteria for pedophilia. (*Id.* at 90:6-91:7.) After being confronted with the same admissions by Appellant, Dr. Levinson agreed that "[Appellant] meets the criteria for sexually violent predator." (*Id.* at 91:17-92:1.)

A "sexually violent predator" is one who has "a mental abnormality or personality disorder that makes the individual likely to engage in predatory

9

sexually violent offenses." 42 Pa.C.S.A. § 9799.12. A "mental abnormality" is

> [a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

*Id.* "Predatory" means "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.* "Sexually violent offenses" are identified in 42 Pa.C.S.A. § 9799.14 and include the indecent assault and corruption of minors offenses that Appellant admitted committing in this case.

After assessing Appellant, Dr. Valliere and Appellant's own expert opined that Appellant suffers from a mental abnormality, pedophilia. Further, both opined that he meets the above definition of a sexually violent predator. In light of the experts' opinions and the nature of the instant offense, which involved Appellant abusing his adopted daughter *for four years*, beginning approximately one year after marrying her mother, by touching her breasts and her vagina, the Commonwealth easily met its burden of proving that Appellant is a sexually violent offender "by clear and convincing evidence." 42 Pa.C.S.A. § 9799.24(e)(3). Further, given Appellant's sordid sexual history, it is likely that Appellant will reoffend.

10

In his Concise Statement, Appellant complains that the Court "erred as a matter of law and/or abused its discretion in finding [him] to be a Sexually Violent Predator." (Conc. Stmt. ¶ 8.) More specifically, Appellant complains that the Court "abused its discretion when it failed to consider Dr. Valliere's testimony that [Appellant] did not display several of the factors considered when assessing if a person is a sexually violent predator." (*Id.* ¶ 9.) When a member of the Sexual Offenders Assessment Board assesses a defendant to determine if he is a sexually violent predator, the

assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

11

     (ii)    Whether the individual completed any prior sentences.

     (iii)    Whether the individual participated in available programs for sexual offenders.

    (3)    Characteristics of the individual, including:

     (i)    Age.

     (ii)    Use of illegal drugs.

     (iii)    Any mental illness, mental disability or mental abnormality.

     (iv)    Behavioral characteristics that contribute to the individual's conduct.

    (4)    Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b).

In this case, Appellant argues that the Court erred or abused its discretion because there was no evidence concerning five of the above factors. (Conc. Stmt. ¶ 9(a)-(e).) The Court will address each such factor separately.

First, Appellant argues that there was no evidence that his current offense involved multiple victims, which is the first factor pursuant to 42 Pa.C.S.A. § 9799.24(b)(1)(i). (Conc. Stmt. ¶ 9(a).) While this may be true, it is also true that:

> [W]ith regard to the various assessment factors listed in Section [9799.24(b)], there is no statutory requirement that all of them or any particular number of them be present or absent in order

12

to support an SVP designation. The factors are not a check list with each one weighing in some necessary fashion for or against SVP designation. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities.

Thus, while the Board is to examine all the factors listed under Section [9799.24(b)], the Commonwealth does not have to show that any certain factor is present or absent in a particular case.

*Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa. Super. 2010) (quoting *Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008) (citations omitted)). For the above reasons, Appellant's first contention is without merit.

Next, Appellant argues that there was no evidence that he used "gratuitous violence or obsessive force to gain [the] compliance of the victim." (Conc. Stmt. ¶ 9(b).) There are no factors requiring the assessor to consider "gratuitous violence" or "obsessive force." Rather, the assessor is to consider whether the current offense "included a display of unusual cruelty" and whether the defendant "exceeded the means necessary to achieve the offense." 42 Pa.C.S.A. § 9799.24(b)(1)(ii), (vi). With regard to unusual cruelty, Dr. Valliere concluded that "[t]here is nothing in the offense information to suggest that [Appellant] was aroused to cruelty or the pain, humiliation, or terror of the victim." (Ex. C-1 at 5.) Nevertheless, the Court did not consider the Appellant's "arousal" with regard to this factor. Rather, in determining whether Appellant is likely to reoffend, the Court considered the unusual cruelty displayed by Appellant in *committing* the offense,

13

namely grabbing the victim's head on numerous occasions and forcing her to suck his penis when she was between the ages of eight and twelve. With regard to whether Appellant exceeded the means necessary to achieve the offense, Dr. Valliere noted that Appellant "did not do more than was necessary to gain compliance from his victim." (*Id.*) However, for the reasons outlined in *Brooks*, Dr. Valliere's conclusion in this regard did not preclude the Court from determining that Appellant is a sexually violent predator. Thus, for the above reasons, Appellant's second argument is meritless.

Appellant next argues that the Court erred by failing to consider Dr. Valliere's testimony "that there was nothing to suggest that [Appellant] is sexually aroused by cruelty, humiliation, or terror of the victim." (Conc. Stmt. ¶ 9(c).) As noted above, Appellant's "arousal" in this regard is not a relevant factor under the statute. As further noted above, the Court found that Appellant committed the current offense in a cruel and humiliating way that surely terrorized the victim. Thus, Appellant's contention is baseless.

Next, Appellant complains that the Court failed to consider Dr. Valliere's testimony that "it was not clear if [Appellant] selected [the] victim for her preexisting vulnerability such as emotional disturbance or mental limitation." (*Id.* ¶ 9(d).) Initially, the Court notes that there is no such factor under the statute. Rather, the victim's mental capacity is the relevant consideration. *See* 42 Pa.C.S.A. § 9799.24(b)(1)(vii). In this regard, Dr.

14

Valliere noted that the victim mutilated herself during the four years Appellant abused her and that Appellant would call her fat and otherwise humiliate her. (Ex. C-1 at 5.) Thus, contrary to Appellant's assertion, the Court did consider evidence relevant to this factor, and that evidence was not favorable for Appellant.

Appellant next argues that the Court erred in failing to consider Appellant's lack of a prior criminal record. (Conc. Stmt. ¶ 9(e).) In reaching its decision, the Court did consider this fact. However, as noted above, the Superior Court has held that the Commonwealth need not prove evidence of each factor. Thus, Appellant's argument is misplaced.

In numbered paragraphs ten through thirteen of his Concise Statement, Appellant suggests that the Court erred in considering Dr. Valliere's testimony because she relied on information concerning undocumented incidents not resulting in charges, offenses for which Appellant had not been convicted, facts beyond the scope of Appellant's guilty plea, and hearsay. (Conc. Stmt. ¶¶ 10-13.) In this regard, the Court notes that Dr. Valliere's report, which contains the information in question, was admitted into evidence without objection. (N.T., 9/27/2013, at 52:19-24.) In any event, Dr. Valliere considered this information in determining whether Appellant is likely to reoffend. (Ex. C-1 at 6.) An assessor is supposed to consider "[f]actors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense." 42

15

Pa.C.S.A. § 9799.24(b)(4). According to Dr. Valliere's assessment, this is precisely why she considered this information, which is referred to in that section of her report entitled "FACTORS THAT ARE SUPPORTED IN THE SEXUAL ASSESSMENT FIELD AS REASONABLY RELATED TO THE RISK OF RE-OFFENSE." (Ex. C-1 at 6.) Moreover, Dr. Valliere testified that this type of information is reasonably relied upon by experts in her field in forming opinions as to whether a defendant is a sexually violent predator. (*See* N.T., 9/27/2013, at 11:4-17.) Accordingly, this type of information was not required to be admissible to form the basis of Dr. Valliere's opinion. *See* Pa.R.E. 703. For all of the above reasons, Appellant's argument is without merit.

Next, Appellant complains that the Court erred in failing "to consider that the only documents reviewed by Dr. Valliere when assessing [Appellant] as a sexually violent predator were those reports that are provided to her by the Commonwealth." (Conc. Stmt. ¶ 14.) In this case, there is no evidence that Dr. Valliere relied solely on documents provided by the Commonwealth. To the contrary, Dr. Valliere's report itself indicates that Investigator Kluge, of the Sexual Offenders Assessment Board, gathered all of the information relied upon by Dr. Valliere, and that information is identified in the report. (Ex. C-1 at 1-2.) Thus, Appellant's argument is incorrect. It is also surprising, given that Appellant chose not to participate in the assessment. (*Id.* at 2.)

16

Finally, Appellant argues that the Court erred when it failed to consider that he has bipolar disorder and, up until recently, had not been treated for the condition. (Conc. Stmt. ¶¶ 15-16.) The Court did consider Appellant's alleged bipolar disorder. However, the Court also considered and found credible Dr. Valliere's testimony, on direct examination, as follows:

> Q. Okay. If one has [a mental disorder or mental illness], would that in any way interfere or impact on your opinion as to whether or not he meets the diagnostic criteria for pedophilia?
>
> A. No. Pedophilia is made purely by the behaviors as I described. He may have other disorders that exacerbate his behavior, make him more difficult to manage. . . .
>
> So there are illnesses that can exacerbate difficulties in treatment, but there's no other disorder that causes you to sexually victimize a child for a significant period.
>
> Q. What about bipolar disorder?
>
> A. *That's not related to sexual assault of children in any way.*
>
> Q. Or panic disorder?
>
> A. Absolutely not. Bipolar disorder may make an individual more difficult to manage if they have bipolar disorder on top of deviate arousal. For example, if they don't comply with their medication, they may lose the self[-]regulation ability to control those urges, so it may exacerbate the treatment of them or management.

(N.T., 9/27/2013, at 15:4-16:7 (emphasis added).) On cross-examination, Dr. Valliere reiterated the point as follows:

> Q. And it's never your opinion that the inappropriate contact with a minor could be caused by bipolar condition?

17

A.    People can go into manic episodes where they get hypersexual.  But with people who are not -- there are many, many, many bipolar people in the world that are not sex offenders.  In fact, most bipolar people are not sex offenders.  So they might act out with masturbation or to things in an extramarital state or act inappropriately sexually, but are not [deviant].

(*Id.* at 32:9-20.)  In sum, Dr. Valliere considered Appellant's alleged bipolar condition, but it did not change her opinion that Appellant is a sexually violent predator.  Likewise, the Court considered Appellant's alleged bipolar condition and was not presented with any credible evidence to allow it to determine that Dr. Valliere was incorrect in this regard.

For all of the above reasons, the Court did not abuse its discretion or err in determining that Appellant is a sexually violent predator.

BY THE COURT:

Date:  March 4, 2014                                                    J.

18