J-S29010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE PINES | |
| Appellant | No. 2916 EDA 2016 |

Appeal from the Judgment of Sentence July 19, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003937-2015

BEFORE:  LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

JUDGMENT ORDER BY LAZARUS, J.:                **FILED MAY 23, 2017**

George Pines appeals from the judgment of sentence, imposed in the Court of Common Pleas of Philadelphia County, after he entered a negotiated guilty plea to murder and related charges.  On appeal, Pines claims that he did not enter his guilty plea knowingly, intelligently and/or voluntarily, and thus, it is invalid.  After careful review, we affirm.

On July 19, 2016, Pines entered into a negotiated guilty plea to murder[1], robbery[2] and two counts of aggravated assault.[3]  Pines was

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(c).

[2] 18 Pa.C.S.A. § 3701.

[3] 18 Pa.C.S.A. § 2702.

sentenced in accordance with the terms of the plea agreement to an aggregate term of 27½ to 55 years' imprisonment. On July 24, 2016, Pines filed a post-sentence motion to withdraw his guilty plea, which the trial court denied following an evidentiary hearing. Pines timely appealed, and pursuant to Pa.R.A.P. 1925(b), he filed a court-ordered concise statement of errors complained of on appeal. On appeal, Pines raises the following question for review: "Did the trial court err when it denied [Pines'] motion to withdraw [his] guilty plea following the evidentiary hearing?" Brief of Appellant, at 4.

It is well settled that when a defendant has entered a negotiated guilty plea, his "plea . . . amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Reichle*, 589 A.2d 1140, 1141 (Pa. Super. 1991). Here, Pines claims he was unprepared to discuss any plea negotiations with trial counsel in the absence of various discovery materials.[4] However, the record belies this claim where it is apparent that there was a factual basis for Pines' guilty plea. N.T. Guilty

_____

[4] Pines avers he did not have access to various medical reports and "75-48" documents prepared by police officers involved in his case. N.T. Motion to Withdraw Guilty Plea Hearing, 8/17/16, at 4-5. However, the record indicates, "voluminous medical records" and "every single document that was generated by police, including multiple [75-48 documents] were passed in discovery." N.T. Motion to Withdraw Guilty Plea Hearing, 8/17/2016, at 16, 18.

- 2 -

Plea Hearing, 7/19/16, at 2-25. Moreover, Pines' written and oral colloquies demonstrate he entered his guilty plea knowingly, intelligently and voluntarily. N.T. Guilty Plea Hearing, 7/19/16, at 56-57 ("Knowing everything now that I have just explained to you about how you have the right to continue with your jury trial, do you still want to give up that right and to plead guilty? Yes."); Written Guilty Plea Colloquy, 7/19/16. **See Commonwealth v. Reid**, 117 A.3d 777, 783 (Pa. Super. 2015) (entry of negotiated plea is strong indicator of voluntariness of plea; law does not require that defendant be pleased with outcome of decision to entered guilty plea, but that decision was knowingly, voluntarily and intelligently made).

Upon review of the plea/sentencing transcript[5], the written plea colloquy, Pines' brief,[6] the relevant law and the opinion of the Honorable Rose Marie Defino-Nastasi, we find that the trial court's well-reasoned decision comprehensively and correctly disposes of Pines' issue on appeal. Accordingly, we affirm based on Judge Defino-Nastasi's decision. Counsel is directed to attach a copy of that opinion in the event of further proceedings in this matter.

Judgment of sentence affirmed.

_____

[5] **See** N.T. Guilty Plea Hearing, 6/19/16, at 26-57, 68-73.

[6] The Commonwealth did not file a brief in this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :  CP-51-CR-0003937-2015

**FILED**  2916 EDA 2016

v.

GEORGE PINES

NOV 0 7 2016

Criminal Appeals Unit
First Judicial District of PA

CP-51-CR-0003937-2015 Comm. v. Pines, George
Opinion

**OPINION**



7522641031

Rose Marie DeFino-Nastasi, J.

## PROCEDURAL HISTORY

On or about February 22, 2015, Defendant was arrested and charged with Murder generally and related charges.

Jury selection concluded on July 18, 2016. N.T. 07/18/16 at pp. 3-181. A motion to suppress the statement the Defendant gave to police on February 22, 2015, was litigated after jury selection. *Id.* at pp. 182-314. The trial court issued its findings of fact and conclusions of law and denied the motion on July 19, 2016. *See* N.T. 07/19/16 at pp. 2-25, 28-30 (attached hereto as Exhibit A).

On the day of trial, immediately after the court denied the motion, the Defendant stated to the court that he did not feel as though he was "being represented to the fullest capacity of the law," that counsel should have been "more or less, more argumentative," and requested new counsel. *Id.* at pp. 26-28. The court denied the Defendant's request for new counsel. *Id.* at pp. 26-27.

1

On July 19, 2016, Defendant entered into a negotiated guilty plea to Third Degree Murder, 18 Pa.C.S. § 2502(c), as a felony of the first degree; Robbery, 18 Pa.C.S. § 3701, as a felony of the first degree; and two counts of Aggravated Assault, 18 Pa.C.S. § 2702, each a felony of the first degree. The remaining charges were nolle prossed.

Defendant was sentenced in accordance with the terms of the plea agreement to twenty (20) to forty (40) years for the third degree murder conviction; a consecutive seven-and-a-half (7½) to fifteen (15) years for the first aggravated assault conviction; and no further penalty for the robbery and second aggravated assault convictions. Defendant received an aggregate sentence of twenty-seven-and-a-half (27½) to fifty-five (55) years.

On July 24, 2016, Defendant filed a post-sentence motion to withdraw his guilty plea, arguing that it was the result of "manifest injustice as it was not made knowingly, intelligently and voluntarily."

On August 17, 2016, the court conducted an evidentiary hearing. The Defendant testified that he wanted to withdraw his plea because he did not have "all the evidence" in his case and his attorney, Regina Coyne, Esq., told him he was "not going to win" his case. The court denied the motion that same day and permitted plea counsel to withdraw. *See* N.T. 08/17/16 at pp. 24-29 (attached hereto as Exhibit B).

This timely appeal followed. Mitchell Strutin, Esq. was appointed and filed a Rule 1925(b) Statement of Matters Complained of on Appeal, pursuant to an Order of the court, claiming that the trial court erred when it denied Defendant's motion to withdraw his guilty plea because it was not knowingly, voluntarily, or intelligently entered because Defendant did not have all of the discovery materials before he entered the plea; there was a conflict of interest

2

between Defendant and counsel at the time of the plea; and Defendant's request for new counsel should have been granted and new counsel appointed prior to entry of the plea.

## FACTS

The factual recitation for the plea was read into the record by the Commonwealth. The relevant facts are as follows:

This incident occurred the night of January 17, 2015 into the early morning of January 18, 2015, at 1540 Adams Avenue in Philadelphia. Sheina Martin (victim), Terrance Soloman (decedent), and Nancy Mundo (victim) were at that address. The Defendant came into the apartment and gave Mr. Soloman, who was a drug dealer, $200, either to purchase crack himself or to pay off a debt for Julia "Sugar" Johns. The Defendant left the apartment. Miss Mundo left the apartment shortly after the Defendant. When she did, she observed the Defendant with two masked men, one black and one Hispanic. The Defendant had a handgun. N.T. 07/19/16 at pp. 57-58.

The three men pushed Miss Mundo back into the apartment. One of the masked men grabbed Miss Martin, who was hiding in a closet in the bedroom, and brought her into the living room. Miss Martin, Mr. Soloman, and Miss Mundo were directed to sit on two separate couches. The men proceeded to rob and ransack the apartment looking for drugs and money. Mr. Soloman eventually removed from his pocket approximately two bundles of crack/cocaine. All three men asked him where his money was located at various points during this interaction. *Id.* at pp. 58-59.

The Defendant and the Hispanic male continuously passed the handgun back and forth to each other. Mr. Soloman initially did not give up the money, but eventually removed it from his

3

other pocket and handed it to them. The black male in the mask directed Mr. Soloman to take off all of his clothes until he was completely nude. The Hispanic male checked every item of clothing as it was taken off. *Id.* at p. 59.

The black male continued to ransack the apartment. He then turned to the Defendant and asked him what he wanted to do with "them." The Defendant said "put them in the bathroom." Miss Martin, Miss Mundo, and a now-nude Mr. Soloman were ushered into the bathroom. At that time, Miss Martin, who was standing in the bathtub, watched the Defendant take his gun and shoot Mr. Soloman in the face. Miss Mundo, who was standing within two to three feet of Mr. Soloman, dropped to the ground and hid behind the toilet. The Defendant then turned the gun toward Miss Martin. *Id.* at pp. 59-60.

Miss Martin struggled with the Defendant in an attempt to grab his gun and push him out of the apartment. The gun went off multiple times during the struggle. Miss Martin suffered a deep graze wound to the right shoulder, a graze wound to the right side of her head, and as she was pushing the Defendant out of the apartment onto the steps, he shot her in the chest. The bullet entered one of Miss Martin's breasts and exited out of the other. Miss Martin ran to her friend's apartment in the back of the building and called 911. *Id.* at pp. 60-61.

Police Officer Waymon and Officer Witcraft responded to the location for a shooting victim. Miss Martin was bleeding from her chest in a T-shirt and from her shoulder. They described her as hysterical and screaming, "Three men came into the apartment, three men. She then described the doer as a man named George. She described him as a short, black male, wearing glasses." *Id.* at p. 62.

Police Officer Norat and Officer Acevedo responded to 1540 Adams Avenue. Mr. Soloman's naked body was face down in the bathroom near the bathtub. He was still breathing.

Mr. Soloman was transported to Hahnemann Hospital and ultimately pronounced dead approximately twenty-two (22) hours later. Dr. Bruce Wainer, Associate Medical Examiner, conducted the autopsy. The cause of death was a gunshot wound to the head. The manner of death was homicide. *Id.* at pp. 62-63.

Five (5) Hornady brand .9 millimeter fired cartridge casings (FCC) and four bullet specimens were recovered at the scene. A bullet specimen was also recovered from Mr. Soloman's body. Officer Jesus Cruz of the Firearms Identification Unit determined that the FCCs and bullet specimens were all fired from the same .9 millimeter handgun. *Id.* at p. 64.

Miss Martin gave a statement to police on January 18, 2015, and a second statement on February 22, 2015. She knew the Defendant from the neighborhood, they had smoked together and were both users. The Defendant came over to give Mr. Soloman money. A minute or two after the Defendant left, he returned with two other males. She identified a photograph of the Defendant in a photo array. *Id.* at pp. 64-65.

Miss Mundo gave a statement to police on February 3, 2015. She did not know the Defendant, but stated that he was the same person who had come in earlier and had given Mr. Soloman $200. When she walked outside, the Defendant was with a black male and a Puerto Rican male, both in masks. She identified the Defendant in a photo array on February 22, 2015. *Id.* at pp. 65-66.

Testimony from the motion to suppress was incorporated into the Commonwealth's recitation of the facts. In sum, on February 21, 2015, at 11:48 p.m., Officer Brian Wolf received information that a male named "George," wanted for questioning in a homicide, was parked outside of the Sugar and Spice convenience store at 4801 Frankford Avenue in Philadelphia. He parked behind the vehicle and waited for the driver to return. A black male meeting the flash

description got into the driver's seat of the vehicle. Officer Wolf approached the driver's side of the vehicle and spoke to male, identified as the Defendant. The Defendant said his name is George Pines and asked if this was in reference to a homicide of his friend, Marcus McMillan. N.T. 07/18/16 at pp. 184-91. The Defendant turned over his car keys and was transported to homicide headquarters. He was calm, neatly dressed, and completely sober. *Id.* at pp. 192-93.

The Defendant arrived at headquarters around 12:30 a.m. on February 22, 2015. Detective John Harkins filled out a 75-229 biographical information report with the Defendant at that time. The Defendant was *Mirandized* at 1:20 a.m. *Id.* at pp. 193-209. He signed a vehicle consent to search at 1:36 a.m. and a consent to search his cell phone at 2:15 a.m. *Id.* at pp. 209-10. The written portion of the statement began at 7:30 a.m. on February 22, 2015. *Id.* at pp. 211-14. The Defendant was verbally *Mirandized* a second time and initialed the seven questions that pertain to the warnings prior to giving the written statement.

The Defendant identified photographs of Mr. Soloman and Miss Martin. In his statement to detectives, he stated that he shot and killed Mr. Soloman. He did not shoot Miss Martin, "[i]t was one of the robbers." He went to the house to purchase $200 of crack/cocaine from Mr. Soloman. He was there for three (3) to four (4) minutes. When he left and walked toward the end of the driveway, he was approached by two men wearing masks, one was a young black male and the other was Puerto Rican. *Id.* at pp. 214-16. The Defendant stated:

"The black guy says you know what it is and they had guns out. So we went back to the house and I knocked on the door while the one guy stood behind me and the other guy was off to the side of the door. Sool [Terrance Soloman] opened the door and saw it was me, then the guy behind me just pushed me in and they both followed me.

As soon as I got in, the one guy, the young black guy, hands me a gun and says you are going to do this while putting a gun in my back. The Puerto Rican guy just started rifling the place, looking for the drugs. After they found the drugs, they started looking for money. They made Sool empty his pockets and when they found the money, they took it. After they took the money, they made Sool take his clothes off. After that, they put everyone in the bathroom . . . the old lady [Nancy Mundo] got put in there first, then Sheina [Martin], then Sool . . . the young black guy then took me to the door of the bathroom and still had his gun at my back and he told me to shoot, so I did. I turned my head and squeezed the trigger. I only fired one shot. I actually think that's all that I had in my gun because I only remember firing one shot and later the gun was empty . . . I saw Sool fall down into the tub. That's when Sheina ran past me. As Sheina ran past me, the young black boy pushed me out of the way and he started shooting at her as she is running toward the door. Sheina fell right at the door and was squirming on the floor. The young black guy ran out of the house and I just waited a minute. Once I was sure they were gone, I left."

*Id.* at pp. 216-19.

The Defendant told police that he did not known where Mr. Soloman or Miss Martin had been shot. He stated that he was the only one to fire at anyone in the bathroom. When he left the property, he ran to a small park across the street from the house and got high. He said he shot Mr. Soloman with a small, black automatic firearm. He tossed the gun off of the Tacony Bridge. *Id.* at pp. 219-20.

7

The Defendant described the black male as young, early 20's, 6 foot 1 to 6 foot 2, thin build, dark skin, wearing dark jeans, a dark jacket, and some kind of mask with two eyes and a mouth cut, like a skullcap with holes in it. The other guy was Puerto Rican, late 20's, early 30's, heavyset, 5 foot 9 to 5 foot 10, light skin, wearing blue jeans, a black jacket, and a similar mask. Both of them had guns. "The Puerto Rican guy had a large black gun and the younger black guy had a smaller gun like [his]." *Id.* at p. 221. The Puerto Rican male fled the property "either outside or at the front door when the shooting started," before the Defendant and the black male left. *Id.* at pp. 221-22.

## ANALYSIS

Defendant argues that the trial court erred when it denied his post-sentence motion to withdraw his guilty plea.

"[A]fter the court has imposed a sentence, a defendant can withdraw his guilty plea "only where necessary to correct a manifest injustice." *Com. v. Prendes*, 97 A.3d 337, 352 (Pa. Super.), app. denied, 105 A.3d 736 (Pa. 2014) (quoting *Com. v. Starr*, 301 A.2d 592, 595 (Pa. 1973)). "[P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage the entry of guilty pleas as sentencing-testing devices." *Prendes*, 97 A.3d at 352 (quoting *Com. v. Kelly*, 5 A.3d 370, 377 (Pa. Super. 2010), app. denied, 32 A.3d 1276 (Pa. 2011)).

To be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. *Id.* at 352 (citing *Com. v. Pollard*, 832 A.2d 517, 522 (Pa. Super. 2003)). "[A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." *Id.* (citing *Com. v. Gunter*, 771 A.2d 767, 771 (Pa. 2001)). The Pennsylvania Rules of Criminal Procedure mandate pleas be taken in open court and require the court to conduct an on-the-

8

record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. *Id.* (citing *Com. v. Hodges,* 789 A.2d 764, 765 (Pa. Super. 2002) (citing Pa. R. Crim. P. 590)).

Under Rule 590, the court should confirm, *inter alia,* that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. *Id.* (citing *Com. v. Watson,* 835 A.2d 786 (Pa. Super. 2003)). The reviewing Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. *Id.* (citing *Com. v. Muhammad,* 794 A.2d 378 (Pa. Super. 2002)). Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. *Pollard, supra.* Further, "where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." *Com. v. Moser,* 921 A.2d 526, 529 (Pa. Super. 2007).

The trial court did not err when it denied Defendant's motion to withdraw his plea of guilt. N.T. 08/17/16 at pp. 24-29. The record establishes that Defendant executed both a written guilty plea and a written guilty plea colloquy form. The notes of testimony from the oral colloquy and the evidentiary hearing on the motion to withdraw the plea show that Defendant is unable to establish manifest injustice to permit post-sentence withdrawal of his guilty plea. *See* Exhibit A; Exhibit B. Defendant entered his guilty plea knowingly, voluntarily, and intelligently. At the guilty plea hearing, the court expressly discussed the voluntariness of the plea with the

Defendant – he responded affirmatively that he understood the terms of his plea, the rights he was forfeiting, that he was satisfied with the advice of counsel, and that his plea was being given freely and voluntarily, without any force, threat, or pressure.

## CONCLUSION

Based on the foregoing, the judgment of sentence of the trial court should be affirmed.

By the Court:

Rose Marie DeFino-Nastasi, J.