J-S41027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DENNY LEE RUHL | |
| Appellant | No. 1753 MDA 2016 |

Appeal from the Order Entered September 23, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000344-2016

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 01, 2017**

Denny Lee Ruhl ("Ruhl") appeals from the order, entered by the Court of Common Pleas of Lancaster County on September 23, 2016, which designated him a Sexually Violent Predator ("SVP").[1]  After careful review, we affirm.

On December 3, 2015, Ruhl was charged with four counts of indecent assault,[2] two counts of corruption of minors,[3] and two counts of unlawful

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. § 9799.24.

[2] 18 Pa.C.S.A. § 3126(a)(7).

[3] 18 Pa.C.S.A. § 6301(a)(1)(ii).

contact with minors.[4] Ruhl engaged in various acts of sexual misconduct with nine-year old J.E. and eight-year-old P.E. from February 2015 to November 2015. Pursuant to a negotiated plea agreement, Ruhl pled guilty to all counts on April 25, 2016. He was sentenced to two to four years of incarceration, to be followed by twelve years of probation. Additionally, the trial court ordered Ruhl to be evaluated by the Pennsylvania Sexual Offenders Assessment Board ("SOAB"). At the time of the plea, Ruhl waived the requirement that his evaluation be completed prior to sentencing pursuant to 42 Pa.C.S.A. § 9799.24(a)[5]. **See Commonwealth v. Whanger**, 30 A.3d 1212 (Pa. Super. 2011) (defendant can waive pre-sentence requirement in written colloquy).

After his evaluation by the SOAB, the Commonwealth requested a hearing to establish whether Ruhl should be classified as an SVP pursuant to section 9799.24. The hearing was held September 23, 2016, and the court issued an order that same day concluding that Ruhl should be classified as an SVP. Ruhl filed a timely notice of appeal to this Court on October 20,

---

[4] 18 Pa.C.S.A. § 6318(a)(1).

[5] After conviction, but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the SOAB. The order for an assessment shall be sent to the administrative officer of the SOAB within ten days of the date of conviction for the sexually violent offense. 42 Pa.C.S.A. § 9799.24(a).

2016.  Ruhl filed his Pa.R.A.P. 1925(b) statement on November 2, 2016; the Commonwealth did not file a response to Ruhl's statement.

On appeal, Ruhl raises the following issues for our review:

1.   Whether the evidence was sufficient to establish by clear and convincing evidence that the Defendant was an SVP.

2.   Whether the Court erred in relying upon the opinion of Dr. Stein, where said opinion was improperly based on unproven allegations (regarding T.W.) which were not part of the factual basis to the plea.

Trial Court Opinion, at 3.

An SVP is defined as:

An individual determined to be a sexually violent predator under section 9795.4 (relating to assessments) prior to the effective date of this subchapter or an individual convicted of an offense specified in:

(1) section 9799.14(b)(1), (2), (3), (4), (5), (6), (8), (9) or (10) (relating to sexual offenses and tier system) or an attempt, conspiracy or solicitation to commit any offense under section 9799.14(b)(1), (2), (3), (4), (5), (6), (8), (9) or (10);

(2) section 9799.14(c)(1), (1.1), (1.2), (1.3),(2), (3), (4), (5) or (6) or an attempt, conspiracy or solicitation to commit an offense under section 9799.14(c)(1), (1.1), (1.2), (1.3),(2), (3), (4), (5) or (6); or

(3) section 9799.14(d)(1), (2), (3), (4), (5), (6), (7), (8) or (9) or an attempt, conspiracy or solicitation to commit an offense under section 9799.14(d)(1), (2), (3), (4), (5), (6), (7), (8) or (9)

who, on or after the effective date of this subchapter, is determined to be a sexually violent predator under section

9799.24 (relating to assessments) due to a mental abnormality[6] or personality disorder that makes the individual likely to engage in predatory[7] sexually violent offenses.[8] The term includes an individual determined to be a sexually violent predator or similar designation where the determination occurred in another jurisdiction, a foreign country or by court martial following a judicial or administrative determination pursuant to a process similar to that under section 9799.24. In addition, the term shall include any person convicted between January 23, 2005, and December 19, 2012, of any offense set forth in section 9799.13(3.1) (relating to applicability) determined by a court to be a sexually violent predator due to a mental abnormality or personality disorder that made the person likely to engage in predatory sexually violent offenses, which person shall be deemed a sexually violent predator under this subchapter.[9]

42 Pa.C.S.A. § 9799.12.

Pursuant to 42 Pa.C.S.A. § 9799.24, after conviction but prior to sentencing, a trial court must order an individual convicted of a sexually violent offense to be assessed by the SOAB. *Cf. Whanger, supra*. Once

---

[6] "Mental abnormality" is defined as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. § 9799.12.

[7] "Predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." 42 Pa.C.S.A. § 9799.12.

[8] "Sexually violent offense is defined as "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II or Tier III sexual offense." 42 Pa.C.S.A. § 9799.12.

[9] Ruhl was convicted of the offenses listed in section 9799.14(b)(8), section 9799.14(c)(5), and section 9799.14(d)(8).

- 4 -

the SOAB receives the court's order, the administrative director appoints a member to conduct an assessment to establish whether the individual should be classified as an SVP.[10]

Section 9799.24(b) provides:

An [SVP] assessment shall include, **but not be limited to**, an examination of the following:

(1) Facts of the current offense, including:

    (i)    Whether the offense involved multiple victims.
    (ii)    Whether the individual exceeded the means necessary to achieve the offense.
    (iii)    The nature of the sexual contact with the victim.
    (iv)    Relationship of the individual to the victim.
    (v)    Age of the victim.
    (vi)    Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
    (vii)    The mental capacity of the victim.

(2) Prior offense history, including:
    (i)    The individual's prior criminal record.
    (ii)    Whether the individual completed any prior sentences.
    (iii)    Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

    (i)    Age of the individual.
    (ii)    Use of illegal drugs by the individual.
    (iii)    Any mental illness, mental disability or mental abnormality.
    (iv)    Behavioral characteristics that contribute to the individual's conduct.

---

[10] 42 Pa.C.S.A. § 9799.12.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense.

42 Pa.C.S.A. § 9799.24(b) (emphasis added).

A determination of an individual's SVP status may only be made after the SOAB's assessment and hearing before the trial court.[11] The proper analysis for experts testifying at an SVP hearing is whether the defendants satisfy the statutory definition of an SVP, specifically, whether they suffer from "a mental abnormality or personality disorder that makes them likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. The fact finder is free to reject, accept, or give some weight to admitted expert opinion evidence. *Commonwealth v. Stephens*, 74 A.3d 1034, 1041 (Pa. Super. 2013).

The question for the trial court determining an individual's SVP status "is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses." *Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa. Super. 2010) (citing 42 Pa.C.S.A. § 9792 (repealed), as amended 2011, Dec. 20, P.L. 446, No. 111, § 12). On appeal of a trial court's classification of an individual as an SVP, the function of the Superior Court "is one of review, and not of weighing and assessing evidence in the

---

[11] 42 Pa.C.S. § 9799.24(e).

first instance." ***Commonwealth v. Meals***, 912 A.2d 213, 223 (Pa. 2006). "In conducting sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial." ***Id***. at 218 (citation omitted). This Court will reverse a trial court's determination of a sexually violent predator status "only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." ***Brooks, supra*** at 860.

In the instant case, the Commonwealth presented testimony from Robert M. Stein, Ph.D., who conducted Ruhl's SOAB assessment. Dr. Stein concluded that Ruhl met the requirements for SVP classification because he suffered from a mental abnormality, namely pedophilic disorder, which "describes sustained sexual interest in young children," and that he exhibited predatory behavior. N.T. SVP Hearing, 09/23/16, at 13-14. Dr. Stein described predatory behavior as "either an act directed at a stranger, or, if it's a familiar person, anything that either initiates or establishes or maintains or promotes sexual victimization." ***Id***. at 13. Here, Dr. Stein noted that the evidence supported a finding that Ruhl's multiple acts of sexual assault "serve to promote a sexually victimizing relationship with each victim." ***Id***. at 13-14. Dr. Stein concluded that there was sufficient evidence indicating Ruhl "would re-offend in the future if given unsupervised access to young girls." ***Id***. at 14-15.

In making his determination, Dr. Stein considered the factors enumerated in section 9799.24(b). Dr. Stein based his conclusion on "the acts with the children in this case and the history provided to police that there was sufficient evidence that [Ruhl] 'has harbored sexual interest in children for a period of greater than six months.'" Trial Court Opinion, 12/19/16, at 8 (citing N.T. SVP Hearing, 09/23/16, at 13).

Ruhl's history, which was based in part on uncharged conduct, is what led Dr. Stein to determine Ruhl's behavior was predatory. Dr. Stein relied on a police report from T.W., a family member of Ruhl's, regarding an incident in 1999 where Ruhl molested her. Ruhl was twenty-one at the time, while T.W. was nine. N.T. SVP Hearing, 09/23/16, at 8-9. Even though this incident was not prosecuted, Dr. Stein relied on it because during the instant investigation, Ruhl told his wife about the incident, the police interviewed T.W., who confirmed the incident, and a report made to Childline regarding that incident was discovered. *Id*. at 8-9. Dr. Stein testified that had he not considered the uncharged and unproven allegations by victim T.W., the period of more than six months would not have applied. *Id*. at 17.

At the SVP hearing, Ruhl presented testimony from Timothy P. Foley, Ph.D., who reviewed the information given to Dr. Stein and made his own report. Dr. Foley analyzed the same factors as Dr. Stein, but concluded that Ruhl was not an SVP. Specifically, he testified that his opinion differed from Dr. Stein's because of the weight given to the previous allegations in 1999.

Dr. Foley did not believe Ruhl had a sustained interest in children to render a diagnosis of pedophilic disorder based on the few incidents reported in this case over a short period of time. Thus, he could not conclude that Ruhl had a mental abnormality. Dr. Foley testified that he did not consider the incident in 1999 to make his determination because he would not rely on hearsay allegations that did not result in criminal charges in forming his decision.[12] Ultimately, Dr. Foley concluded that Ruhl was not an SVP because he believed Ruhl "was less than likely" to reoffend in the future based on his Static-99 score.[13] N.T. SVP Hearing, 09/23/16, at 37.

After careful consideration of the reports of both Dr. Stein and Dr. Foley, as well as all of the evidence presented by both parties, the trial court concluded that the evidence presented by the Commonwealth was sufficient to prove by clear and convincing evidence that Ruhl was an SVP. The trial court gave more weight to Dr. Stein's testimony than Dr. Foley's, as well as to Pennsylvania statutory and decisional law, which:

> does not require an actual psychological diagnosis in order for there to be a mental abnormality which would classify an individual as a Sexually Violent Predator or that any assessment tool, such as the Static-99, must be utilized in lieu of clinical

---

[12] The charges Ruhl plead guilty to occurred between February 2015 to November 2015, which is a period of greater than six months.

[13] The Static-99 is an actuarial risk assessment tool that compares an individual to 30,000 people on a number of factors and is correlated with recidivism percentages over five to ten years. *See* N.T. SVP Hearing, 09/23/16, at 11.

judgment to determine whether a defendant is less like[ly] to re-offend.

Trial Court Opinion, 12/19/16, at 10.

Ruhl alleges that the evidence before the court was not clear and convincing as to whether he suffered from a mental abnormality that would make him likely to commit predatory sexually violent offenses in the future. To support this argument, Ruhl relies on a contradiction in Dr. Stein's testimony regarding his reliance on the unproven allegations from 1999 to achieve the six-month time period necessary for a medical diagnosis of pedophilic disorder. We find Ruhl's claim is meritless.

The trial court clarified this inconsistency. Dr. Stein explained that his response to the cross-examination question at issue was meant to indicate that without the six-month timeframe he would not be able to give a medical diagnosis of pedophilia. N.T. SVP Hearing, 12/09/16, at 30-31. The term "mental abnormality," as used in section 9799.12, however, "is a creation of statute and not a medical diagnosis." Trial Court Opinion, 12/19/16, at 11. Thus, the trial court and Dr. Stein both resolved that even if the six-month period for pedophilic disorder was not met and no consideration was given to the unproven allegations from the 1999 incident, the facts of this case still support a conclusion that Ruhl has a mental abnormality, as defined by statute.

Ruhl also claims that the trial court erred in relying on Dr. Stein's opinion because his opinion was based on the unproven allegations from the

1999 incident with T.W., which were not part of the factual basis of his plea. In reviewing a challenge to an SVP determination, this Court must "examine all of the evidence adduced by the Commonwealth, 'without consideration as to the admissibility of that evidence.'" **Meals**, 912 A.2d at 224, fn. 14 (quoting **Commonwealth v. Smith**, 568 A.2d 600, 603 (Pa. 1989)). A sufficiency of the evidence challenge to an SVP determination "requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth." **Id**. at 218. Furthermore, Pennsylvania law makes apparent that in determining SVP status, an evaluator is not restricted to the fifteen factors listed in the statute. **See** 42 Pa.C.S.A. § 9799.24(b) ("An assessment shall include, **but not be limited to**[...]") (emphasis added); **see also Commonwealth v. Prendes**, 97 A.3d 337, 360 (Pa. Super. 2014) (noting "[t]he statute governing the SVP assessment does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings").

Ruhl also claims that other experts in the field would not rely on unproven allegations to make an SVP determination. Appellants Brief, at 18. In **Prendes**, this Court held that SOAB expert opinions fall within the general rules of expert witnesses. **Prendes**, 97 A.3d at 360-361. Thus, an SOAB expert's opinion may be based on facts or data he or she has been made aware of or personally observed as long as experts in the field reasonably rely on those kinds of facts or data in forming an opinion on the

subject. *Id*. The facts or data the expert used need not be admissible for the expert's opinion to be admitted. *See* Pa.R.E. 702, 703. The SOAB expert must also state the facts or data on which his or her opinion is based. *See* Pa.R.E. 705. Thereafter, the rules of evidence place the burden of exposing any weaknesses in the expert's opinion on opposing counsel. *Prendes*, 97 A.3d at 361 (citing *In re D.Y.* 34 A.3d 177, 183 (Pa. Super. 2011)).

Here, Dr. Stein's report outlines the criteria he used in reaching his opinion and the basis for his opinion in accordance with the rules of evidence. N.T. SVP Hearing, 12/09/16, at 6. Ruhl argues that because Dr. Foley did not rely on the police reports of the non-adjudicated incident, this shows that it is not typical for other experts in the field to rely on such data. This claim is without merit. Showing that one expert did not rely on such data does not prove other experts in the field do not reasonably rely on it. Additionally, by agreeing to the introduction of Dr. Stein's report and failing to raise any objection to its admission before the trial court, Ruhl waived any argument that Dr. Stein's report was improperly based on unproven allegations that were not a part of his guilty plea. *See Commonwealth v. Baker*, 24 A.3d 1006, 1034 (Pa. Super. 2011).

The Commonwealth presented clear and convincing evidence sufficient to allow the trial court to determine that Ruhl should be classified as an SVP.

The trial court did not err by relying on Dr. Stein's opinion, which was based in part on uncharged allegations.

Accordingly, we affirm the trial court order classifying Ruhl as an SVP.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2017