J-S22040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| GARRETT ASHLEY LUTTRELL | : | |
| Appellant | : | No. 1108 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 30, 2022
In the Court of Common Pleas of Butler County
Criminal Division at CP-10-CR-0001014-2018

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: July 21, 2023**

Garrett Ashley Luttrell (Appellant) appeals from his designation as a sexually violent predator (SVP) following his no-contest plea to corruption of minors and endangering the welfare of children (EWOC).[1] We affirm.

On June 7, 2018, Appellant was arraigned on 156 counts of involuntary indecent assault of a person less than 16 years old, 156 counts of aggravated indecent assault of a person less than 16 years old, and statutory sexual assault of a child. **See** 18 Pa.C.S.A. §§ 3123(a)(7), 3125(a)(8), 3122.1(b).[2] The charges arose from Appellant's sexual abuse of the victim over the course

_____

[1] **See** 18 Pa.C.S.A. §§ 6301(a)(1)(ii), 4304(a)(1).

[2] The Commonwealth also charged Appellant with rape of a child, 18 Pa.C.S.A. § 3121(c); EWOC, **id.** § 4304(a)(1); and statutory sexual assault of child between 11 and 16 years old, **id.** § 3122.1(b).

of four years, beginning when the victim was 10 years old. On July 27, 2021, Appellant entered a negotiated no-contest plea to corruption of minors and EWOC. The trial court subsequently ordered an SVP assessment.

On March 22, 2022, the trial court held an SVP hearing at which Julia Lindemuth (Ms. Lindemuth), a member of Pennsylvania's Sex Offender Assessment Board (SOAB), testified. The trial court designated Appellant as an SVP on May 17, 2022. *See* Order, 5/17/22. On August 30, 2022, the trial court sentenced Appellant to an aggregate one to two years' incarceration, after which Appellant filed the instant timely appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue:

Was the evidence insufficient to sustain the trial court's determination that [Appellant] is a sexually violent predator where it was predicated on an expert opinion lacking a constitutionally and legally adequate foundation?

Appellant's Brief at 4.

Appellant challenges the sufficiency of the evidence underlying his SVP designation. *Id.* at 14-15. Appellant claims Ms. Lindemuth improperly equated his no-contest plea with a guilty plea. *Id.* at 18. Appellant asserts his no-contest plea is not an admission of guilt:

Unlike a guilty plea, a *nolo contendere plea* does not involve an acknowledgement as to having committed an illegal act. Rather, the *nolo contendere* plea admits that the allegations, if proven, meet the elements of the offense or offenses charged. Hence, in pleading no contest, [Appellant] did not admit to having committed the acts alleged.

*Id.* at 19 (citations omitted).

Appellant further argues that Ms. Lindemuth improperly relied on inadmissible hearsay and "unproven conduct." *Id.* at 20. Appellant cites caselaw recognizing the dangers of hearsay evidence. *Id.* at 21-22. According to Appellant, Ms. Lindemuth "made it clear that not only did she rely upon inadmissible hearsay in rendering her opinion, but she assumed that the facts contained in those hearsay documents were true." *Id.* at 23. Appellant maintains:

> This is a constitutionally and legally inadequate foundation to establish the alleged facts in any adjudicative setting and, derivatively, for [Ms. Lindemuth's] expert opinion and the trial court's finding.

*Id.* at 23-24.

Finally, Appellant challenges the trial court's designation of Appellant as an SVP. *Id.* at 24. He asserts the trial court "place[d] undue weight on [] Appellant's plea of *nolo contendere*," and improperly assumed the veracity of the unproven allegations relied upon by Ms. Lindemuth. *Id.* at 25. Appellant states, "Accepting their veracity is in violation of his fundamental rights to due process." *Id.*

We review an SVP designation to determine whether the Commonwealth presented clear and convincing evidence that the defendant meets the statutory definition of an SVP. *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015). "As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in

the light most favorable to the Commonwealth." *Id.* (citation omitted). An "expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." *Commonwealth v. Fuentes*, 991 A.2d 935, 944 (Pa. Super. 2010) (*en banc*).

For designation as an SVP, the Commonwealth must first show an individual "has been convicted of a sexually violent offense as set forth in section 9795.1." *See* 42 Pa.C.S.A. § 9792. Instantly, Appellant pled *nolo contendere* to corruption of minors, a Tier I predicate offense. *See* 42 Pa.C.S.A. § 9799.14(b)(8). The Commonwealth thus satisfied this first requirement.

"After conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the board." *Id.* § 9799.24(a). The SOAB is required to undertake a comprehensive assessment of a defendant convicted of a sexually violent offense by considering the fifteen factors set forth in 42 Pa.C.S.A. § 9799.24(b)(1)-(4). These factors include, but are not limited to:

**(1)** Facts of the current offense, including:

**(i)** Whether the offense involved multiple victims.

**(ii)** Whether the individual exceeded the means necessary to achieve the offense.

**(iii)** The nature of the sexual contact with the victim.

**(iv)** Relationship of the individual to the victim.

**(v)** Age of the victim.

**(vi)** Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

**(vii)** The mental capacity of the victim.

**(2)** Prior offense history, including:

**(i)** The individual's prior criminal record.

**(ii)** Whether the individual completed any prior sentences.

**(iii)** Whether the individual participated in available programs for sexual offenders.

**(3)** Characteristics of the individual, including:

**(i)** Age.

**(ii)** Use of illegal drugs.

**(iii)** Any mental illness, mental disability or mental abnormality.

**(iv)** Behavioral characteristics that contribute to the individual's conduct.

**(4)** Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24.

Here, the Commonwealth presented Ms. Lindemuth as an expert in evaluating and assessing whether an individual meets the criteria necessary to be classified as an SVP.[3]  N.T., 3/22/22, at 6.  Ms. Lindemuth testified that

_____

[3] Ms. Lindemuth explained that she has conducted over 500 sex offender assessments.  *Id.* at 6.

although afforded the opportunity, Appellant did not participate in the assessment. *Id.* at 8.

Ms. Lindemuth explained her method of assessing a non-participant:

[O]nce I receive the information gathered by the investigator, I review all of the documents that are provided to me and then … what I am looking for is a mental abnormality or personality disorder that is the impetus or the driving … factor behind the behavior.

….

The factors are delineated in the statute.  And I have them listed in the report.

*Id.* at 8.

Ms. Lindemuth confirmed that she evaluates each of the statutory factors. *Id.* at 8-9.  She testified there are not a particular number of factors that must be present to ascertain whether someone is an SVP:

[Ms. Lindemuth:] The factors help us outline and categorize behaviors and patterns of behavior.  So, under the statute, what I'm looking for is a pattern of behavior that could be identified as a mental abnormality or personality disorder that may be driving the offending.
….

… [T]here are typically two pathways of offending that we know in the field is related to lifetime offending.  That is chronic antisociality and chronic sexual deviance.  So, antisociality can be a personality disorder.  So it's a pattern of behavior over time that's related to ongoing criminality.

The sexually deviant pathway is looking at a pattern of behavior that is spanning a course of time, and generally what we're looking for is more than six months.  So we're looking for a pattern of sexualized behavior for more than six months that may be able to identify why someone is acting out sexually.

*Id.* at 9-10.

With respect to Appellant, Ms. Lindemuth testified:

[Appellant] met the criteria for unspecified paraphilic disorder. And unspecified paraphilic disorder – there was evidence that the child was pubescent. And, so, unspecified paraphilic disorder … meets that diagnostic criteria for unspecified paraphilic disorder in that we had sexual behaviors spanning the course of multiple years with what I would assume, based on the age, is an early pubescent child.

...

[] Paraphilic disorders are lifetime disorders. They can come and go, based on stressors and opportunity and other factors in a person's life; but they cannot be extinguished. So they are lifelong, without a cure.

...

When somebody has a paraphilic disorder, they have a sexual attraction – in this case, a sexual attraction to a[n] early pubescent minor. That is a lifelong disorder. So, having that disorder increases the likelihood that you will re-offend, versus someone who does not have that disorder.

*Id.* at 12-13.

Ms. Lindemuth also testified about Appellant's predatory behavior:

[T]he definition under the statute for "predatory" is an act directed at a stranger or a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to support or facilitate victimization. So it was my opinion [Appellant] did meet the criteria – or the law's definition … of "predatory" because he was a member of [the victim's] household … which would have him being tasked with her care; and instead he used that trust that was afforded to him and made the child a sex partner. So, in my opinion, that meets the criteria of predatory.

*Id.* at 14. Ms. Lindemuth explained that Appellant had "an expression of sexually maladaptive behaviors over the course of time, spanning more than six months." *Id.* at 16. She opined, within a reasonable degree of professional certainty, that Appellant meets the criteria for classification as an SVP. *Id.* at 15.

In crediting Ms. Lindemuth's testimony, the trial court explained:

[Appellant] at the time of the criminal acts was in his early 30s, while the victim was between the ages of 10 and 14. [Appellant] is the victim's stepfather. This relationship was particularly important to Ms. Lindemuth. She testified, "he is her stepfather. He had access to her. He sexually assaulted her. He used his relationship as a stepfather to make her a sexual partner." [N.T., 3/22/22,] at 49. Further, she stated, "And so he preyed upon his stepdaughter, what should have been a parent-child relationship, and used that parent-child relationship and altered it into a sexual relationship.["] *Id.* at 51.

...

In terms of reoffending, [Ms. Lindemuth] additionally went on to testify to two pathways for someone to reoffend. The pathways associated with reoffending are chronic antisociality and sexual deviancy. She testified to the fact [Appellant] was engaging in sexual acts with a minor over the span of approximately four years to be akin to sexual deviancy. Ms. Lindemuth answered "Yes" to the question, "… [Appellant's] behaviors in the instant offense are consistent with sexual deviancy, right?" *Id.* at 49. Sexual deviancy is directly linked in the DSM-V[4] by falling under paraphilic disorders.

---

[4] The Diagnostic and Statistical Manual of Mental Disorders (DSM-V) is a widely accepted tool in the mental health profession.

Trial Court Opinion, 11/29/22, at 3. The trial court emphasized Ms. Lindemuth "testified to not solely focusing on hearsay documents but stated: 'I look at the totality of the information, but I'm focused on what he pled to because that's what he's acknowledging.'" *Id.* at 4 (quoting N.T., 3/22/22, at 17).

The trial court agreed with Ms. Lindemuth's assessment. The trial court found Appellant is a sexually violent predator, "as he was convicted of a sexually violent offense, suffers from an unspecified paraphilic disorder and his behaviors demonstrated a sexual deviancy." *Id.* at 4.

We discern no error in Ms. Lindemuth's consideration of the facts underlying Appellant's no-contest plea. In fact, 42 Pa.C.S.A. § 9799.24(b)(1) required Ms. Lindemuth to evaluate the facts. Contrary to Appellant's assertion, a no-contest plea "is treated in the same manner as a guilty plea in terms of its effect upon a particular case." *Commonwealth v. Williams*, 660 A.2d 614, 619 n.1 (Pa. Super. 1995).

To the extent Appellant challenges Ms. Lindemuth's consideration of hearsay evidence, this Court recently confirmed:

> [A]n SOAB expert opinion falls within the general rules regarding expert witnesses. As such, an SOAB expert's opinion may be based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted. *See* Pa.R.E. 702, 703 …. The SOAB expert must state the facts or data on which the opinion is based. *See* Pa.R.E. 705 and Comment (explaining otherwise inadmissible facts and data supporting expert opinion are considered only to explain the basis for an expert's opinion, not as substantive evidence). Then, the rules of

evidence place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination….

*Commonwealth v. Aumick*, 2023 WL 3939850, 2023 Pa. Super. LEXIS 266, *17-18 (Pa. Super. filed June 12, 2023) (*en banc*) (quoting *Commonwealth v. Prendes*, 97 A.3d 337, 360-61 (Pa. Super. 2014)).

Given the[] statutory mandates, it is clear that the legislature intended that the SOAB member consider more than the limited facts included in a plea colloquy, and that the SOAB member undertake to review and consider the information contained in records provided by state, county and local agencies, offices and entities in this Commonwealth when making an SVP assessment and preparing a statutorily compliant written report. To be sure, **it would be the rare occasion on which the SOAB member would be able to fulfill its statutory obligations if its SVP assessments and written reports were limited to facts contained in a plea colloquy**, admitted into evidence, or determined by the trier of fact.

*Aumick*, 2023 Pa. Super. LEXIS 266, *20 (emphasis added). Based on the foregoing, Appellant's challenge to Ms. Lindemuth's consideration of hearsay evidence does not merit relief. *See id.*

Finally, the record supports the trial court's determination that Appellant has a personality disorder, unspecified paraphilic disorder, which makes him likely to engage in predatory sexually violent offenses. *See* 42 Pa.C.S.A. § 9792. After reviewing the evidence in the light most favorable to the Commonwealth, we conclude that clear and convincing evidence supported the trial court's designation of Appellant as an SVP.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/21/2023